Putnam, J.,
delivered the opinion of the Court.
If the deposition of Lindsay should have been rejected, there ought to be a new trial. Two objections have been made to it. The first is that he was interested ; and, secondly, that it contradicts a written contract.
In regard to the first objection, it appears that the witness is *164 indebted to the plaintiff, and also to the attaching creditor. If the plaintiff should prevail, the property attached will be applied towards his demand. If the defendant should prevail, it will go to reduce the demand of the attaching creditor. In contemplation of the law, it is indifferent to the debtor, which of his creditors shall have the property; he will still remain indebted to the losing party. He may have manifested some preference of one to the other; but this goes to his credit, and not to his competency.
The second objection, seems not to be supported in point of fact. For it appears that the deposition was not introduced to contradict or materially to vary the contract, but to prove that the plaintiff had advanced his money upon the agreement that he should have the consignment of the timber for his security. We are of opinion that the deposition was rightly admitted.
The general question is then to be considered, whether the plaintiff, or the attaching creditor of Lindsay, shall hold the property. On the part of the defendant it is objected, that the plaintiff had no possession of the property, and, therefore, had no [ * 204 ] lien ; inasmuch as Lindsay * had contracted to sell the timber to the United States, and the master of the vessel appointed by Lindsay was proceeding to deliver it accordingly; and it is further proved that the plaintiff did not go on board of the vessel after her arrival, and before the attachment.
But it appears that Lindsay consigned the timber to the plaintiff; that it was shipped on his account; and that he had authority to receive the price from the United States; and, further, that the plaintiff had in his possession a bill of lading of the timber; and that he endorsed his orders upon it before the attachment, directing the master to proceed to the navy-yard at Charlestown, to deliver the property. And the master was acting in obedience to those instructions, when the defendant interposed by his attachment.
The case of Kinloch & Al., Assignees of Sandiman & Graham, Bankrupts, vs. Craig, Sequestrator of John Steine, cited for the defendant from 3 D. & E., 783, greatly differs from the case at bar. In that case Steine shipped the goods to Sandiman fy Graham, and his sequestrator was, under the circumstances, entitled to recover. But it was found that the consignees became bankrupts before the ship arrived, and on that account refused to receive the goods. They never had the possession of them. The bill of lading expressed that they were to be delivered to Steine or his assigns. In the case at bar, the shipment was made upon the account of the plaintiff. The timber was to be delivered to him. He had an authority, coupled with an interest, in the disposal and *165 proceeds of it. Upon the arrival of the vessel, the plaintiff assented to the transaction, and gave his directions accordingly.
It is not necessary, to effect a transfer of bulky articles, that there shall be a manual delivery of them. The delivery of things, which may be considered as the proper indicia of the property, is sufficient. And in the case at bar, the fact of possession may be inferred from the plaintiff’s undertaking to deal with the property as his own, by the * endorsement upon the bill of lading. [ * 205 ] The case, in this part, is as strong as that of Chaplin vs. Rogers, 1 East, 192, which was assumpsit for a stack of hay. The plaintiff was put to the proof of the delivery of it, which he maintained by showing that the defendant had sold a part of the hay to one who had taken it away. This was held sufficient to prove that the defendant had the possession; inasmuch as he had made a valid sale of the hay, and dealt with the property as his own. We are satisfied that the plaintiff, in the case at bar, had such a possession as will enable him to try his right.
It has been further insisted that if the possession was in the plaintiff, he had it as a partner of Lindsay; and that a creditor of one partner may attach his right in the property of the company, and take possession of the whole; and the case of Waugh vs. Carver & Al. has been much relied on to support that position. It is there stated by Eyre, C. J., that “ he who takes a moiety of all the profits indefinitely, shall by operation of law be made liable for losses, if losses arise; upon the principle that, by taking a part of the profits, he takes from the creditors a part of that fund, which is the proper security for the payment of their debts.” This remane, as a general observation, is true. It may be that, as between the parties, no partnership exists; and yet that they may have conducted themselves in such manner, as to have induced others to believe that such a partnership existed, and to give credit accordingly. In such a case, they are not to be protected by their private agreement that one shall not be held answerable for the other.
But the case at bar differs from the case cited. The attaching creditor never had any claims against the supposed firm. He was never imposed upon by any delusive appearances of a copartnership. He trusted Lindsay only.
It cannot, however, be true, that all who participate in the profits, are to be considered as partners, in respect to * the concern or adventure, from which the profits arise. [ * 206 ] Seamen, for example, who are employed in the whale-fishery, are usually compensated for their services by a certain part of the profits of the voyage. Nevertheless it has not been supposed that this circumstance made the mariner a partner with the ship *166 owner, so as to render it lawful for a creditor of the mariner to take the whole cargo of oil for his private debt. So, in the case of shipments to India upon half profits, so generally practised in this country, it would hardly be contended that the numerous freighters, often unknown to each other, have by such shipments become answerable for each other, or in any way interested as partners with the ship-owner, in respect to the dollars, which constitute the adventures, and which he undertook to carry to India for half the profits. If such were the result, there would soon be an end of that very extensive class of commercial enterprises.
The resemblance between the cases now mentioned and the case at bar, is very strong. The plaintiff advanced his funds, to be invested by Lindsay in live oak in Florida, to be procured, cut, and transported, at the expense of Lindsay, but on the account and risk of the plaintiff, to the navy-yards of the United States; and for the services and disbursements of Lindsay, he was to have half the profits, as the owners of the freighting ships to India are compensated for their services and disbursements; and the plaintiff, for his risks and advances, was to have his principal sum repaid, and the residue of the profits. But it never has been thought that the return cargo was liable for the debts of the ship-owner (4).
If, however, the case be put on the defendant’s hypothesis, and it be supposed that the plaintiff and Lindsay were partners, it does not follow necessarily, that a creditor of Lindsay might lawfully take the partnership property. That must depend upon the solvency of the company, and upon the question whether any surplus remained for the separate partner, after the payment of his [ * 207 ] debts to the * company, and the debts of the company to the world. The creditors of the firm are to be preferred to the creditors of the several partners. Now it appears, in the case at bar, that the plaintiff is a large creditor to the supposed firm; and that there is not partnership stock sufficient to pay the debts of the firm. There is no surplus for the debtor partner; and for that reason, the attachment must fail.
As to the direction of the judge respecting the damages, it was suggested that the Court were not agreed upon the subject; whereupon the plaintiff released the 75 dollars, found by the jury, as a compensation to him for the expenses incurred by him in the prosecution of the suit, and then took judgment on the verdict.

 [There is clearly a partnership quoad hoc in all these cases, unless there he an agreement that the party shall, for his services, have a sum equal to half of the profits, and shall not be entitled to an account of the profits, or to any part of them ai euch.—Ed ]