In the case of Daniel Pierson, plaintiff, the opinion of the Court
was delivered by
Wardlaw, J.
A letter was offered in evidence, and has been exhibited to this Court, from J. H. Steinmyer, in Charleston, to J. T. Darby in New York, dated August, 1847. In this a check for a considerable sum of money was enclosed, and Darby was advised to insure the goods he might purchase. A postscript contains these words: “I have made some arrangements with my brother in our business, which I will explain when you return.” It was admitted at the bar, on both sides, that the arrangements here referred to included the admission of J. F. Steinmyer as a party to the agreement, and that, although his name was, by interline-ation, inserted in the writing, without the present or previous express consent of Darby, all that was done was afterwards known to Darby, and approved by him; and, in conformity with the arrangements, the judgment was, in September, 1847, confessed by-Darby to J. H. Steinmyer and J. F, Steinmyer, to secure their *313 past and future advances and liabilities. These circumstances, together with the inspection, by both of the Steinmyers, of the books kept by Darby, their taking of large amounts of goods at cost, J. F.’s abstraction of funds from the store, and his offer to sell his part therein, make up the “other facts” which the Circuit Judge thought might, if standing by themselves, have made the defendants partners, but were controlled by the written agreement.
If the other facts were the proper results of the written agreement, then they shew no more than might have been inferred from it; it is fair, if they are equivocal,' to reconcile them with it:, but if they shew the exercise of rights not involved in it, they should not be controlled by it. Both it and they, in a contest with third persons, amount only to declarations, by word or act, which the defendants have made; and all such declarations and every circumstance attending the transaction may be proved by the third persons, and must be considered in determining what is the true relation between the supposed partners. Even between the defendants themselves, acts, plainly inconsistent with the relation established by a written agreement, might serve as evidence of a new agreement, which established a different relation: and as to third persons, unacquainted with the private understandings which subsisted between the defendants, rights could not be fixed by any such understanding, written or unwritten, if it was in any wise varied by the acts done under it. In his work on Partnership, (sects. 38 — 49,) Judge Story (whose doubts and speculations have been greatly urged in this case on the part of the defendants,) whilst he contends that the reasonable rule would be, in the case of an agent who by agreement is to receive a share of the profits for his compensation, to hold that participation in the profits is only presumptive evidence of partnership, admits that the presumption should prevail, unless it is rebutted and overcome by the intention of the parties and other circumstances which clearly shew an agency and not a partnership. Even under this theory, the exercise of a partner’s rights, by him who would afterwards sink into a mere agent, may well be shewn as *314 part of the circumstances which confirm instead of rebutting the presumption. As to the rights here exercised by the Steinmyers, we will not undertake to say whether they necessarily exceeded the written agreement, nor what inference should be drawn from them: but we desire only to prevent .a conclusion that they were necessarily controlled by the. written agreement. In the case of Bloxam vs. Fourdrinier, cited 2 W. Bl. 999, (which, Judge Story, sect. 68, note, says “stands upon the utmost verge of the law, if it be at all maintainable,”) a right to inspect the books was held to indicate a partner so strongly, that it was the principal circumstance which subjected to partnership liabilities a retiring partner, who, by agreement, was to receive from the profits a fixed annuity for a determinate period.
We are, however, of opinion that the written agreement, independent of the acts which have been spoken of, makes the defendants partners as to the plaintiff. He, without knowledge of the agreement, or of the Steinmyers, as must be supposed, has sold goods on credit to Darby, and the agreement shews that the nett profits which were expected to arise from goods purchased by Darby, were to be divided so that Darby should have only one-half, and the other half, after deducting therefrom a clerk’s hire, was to go to the Steinmyers. Darby was to contribute his services, the Steinmyers to advance money and credit not exceeding a certain sum, and not beyond a day fixed. So far, this seems a very plain case of partnership, upon terms frequently adopted. But if there were no profits, Darby was not to look to the Steinmyers for reimbursement of the sum he paid to a- clerk, or for partial reparation of his other losses. This, however, is unimportant as to third persons. Parties may stipulate between themselves that all the losses beyond what the profits will meet, shall be borne by one party alone ; but where the agreement expressly, or by fair implication, admits that they are to share in losses as well as profits, they are ordinarily partners as to third persons, — in many cases also between themselves (Story, § 56, 23 ; Gilpin vs. Enderby, 5 B.& Al. 954; Bond vs. Pittard, 3 M. & W. 357.) A participation of nett profits implies a partici *315 pation of losses; for until the losses have been deducted, the nett profits cannot be ascertained (Story, § 33, 56; Cheap vs. Cramond, 4 B. & Al. 663.)
By the terms of the agreement, the Steinmyers were not to make their advances directly to the firm as contributions of stock, but were to make them as loans to Darby. This, unknown, as we must suppose, to third persons, made them dormant, instead of ostensible partners; but when their participation, in nett profits has been discovered, cannot avail to exempt them from liability. There is substantially no difference in the two forms of effecting the same result. The studied exhibition in the agreement, of the custom of merchants to receive commission as a reason why the Steinmyers should participate in the profits, rather begets suspicion of their desire to evade responsibility, which was feared, than serves to give them, as money lenders, the casual and indefinite profits of trade, without imposing upon them the liabilities of partners. “The true criterion” (says Judge Story) “ by which we are to distinguish, in cases of loan or annuity, whether there is a partnership as to third persons, is to ascertain whether the lender or annuitant is to receive a share of the profits as profits, or whether the profits are relied on only as a fund for payment; or in other words, whether the profit, premium, or annuity is certain and definite, oris casual, in definite, and depending on the accidents of trade. In the former case it is a loan, in the latter a partnership.” There have been cases where the agreement of a borrower to pay a certain' portion of the profits of a trade as a compensation to the lender, has been held to make the contract usurious between themselves (4 T. R. 353, Morse vs. Wilson); but although a case may be clearly one of usury between the parties, it may as clearly be one where the parties are liable as partners to third persons. (Story, § 69; Doug. 371, Hoare vs. Daws.) Whether the Steinmyers were, under this agreement, to have from Darby, at all events, interest on the monies advanced by them, and to abide the casualties of trade only as to the excess of profits above interest, or whether the interest too was to depend upon the profits, their principal *316 was subjected to no hazard, beyond the insolvency of the borrower, which is a hazard that every lender encounters; and in either view, their right to receive an indefinite amount from the profits, makes them partners as to third persons.
The great effort has been to bring the Steinmyers under the shelter of a distinction, which has sometimes been taken, between the participation in profits hy a partner, and the receiving by an agent, of a sum proportioned to a share in the profits, as a compensation for his services. The distinction has been called nice, .subtle, shadowy; has been disapproved but allowed by Lord Eldon (1 Rose, 89 ; 17 Ves. 409; 19 Ves. 457) and is by most elementary writers considered to be established, (Story, § 38 — 52; 3 Kent Com. 11.) Judge Story manifestly favors the distinction, and is not satisfied with the principle announced by Eyre, C. J., in Waugh vs. Carver, (2 H. Bl. 235) that he who takes a part of the profits, must of necessity be liable to the losses, because he takes from the creditors a part of that fund which is the proper security to them for the payment of their debts; but Judge Story, (§ 59) after á learned discussion, fully recognizes the law as established by Waugh vs. Carver, and many cases before and after it. In Smith’s notes to leading cases, under Waugh vs. Carver, (1 vol. 611) the English cases, touching the distinction here insisted on, are examined, and attention called to the differences which exist between cases where the lights of partners inter se were discussed, (Mair vs. Glennie, 4 M. & S. 240; Wilkinson vs. Frazier, 4 Esp. 182) and other cases where the rights of third persons were in question (Hesketh vs. Blanchard, 4 East, 144;) between produce, proceeds, price, earnings, gross profits, and other terms expressive of a result, short of the final balance between profit and loss, and nett profits, which cannot be ascertained without adjusting such final balance (Dry vs. Boswell, 1 Camp. 329;) but it is acknowledged, in submission to Lord Eldon’s authority, that although participation in profits as profits will make one liable as a partner, an agent or servant, who is not to receive a part of the profits in specie, but a sum of money, calculated in proportion to a *317 given quantum of the profits, will not be a partner even as to third persons. A sum calculated in proportion to a given quantum of the profits, is only a certain per centage on the profits, — necessarily indefinite and casual. An agent might stipulate that he should receive for his services a sum equal to a certain share in the profits of a house owned by neighbors of his employer; that would, of course, give him no rights, nor subject him to any liabilities in the house of the neighbors; it would only make the result of their business the standard of his compensation. In like manner it is permitted that he may make the result of his employer’s business the standard of his compensation, if it clearly appears that he is to receive not a share of the profits as profits, but only a sum measured by such share, and to receive that sum not as a partner with the right which a partner has to take out his share, before a separate creditor of the other partner can take any thing from the firm, or with any other right of a partner, but as a mere agent, claiming only that the employer is his debtor,' and that he stands as any other creditor does. If the profits arose in bullion, the agent, in such' case, would have no right to any share of the bullion, but only to so many dollars as a certain share of it would be worth. As profits usually arise in dollars, and a sum measured by a share of the profits is in dollars too, there is, of course, frequent confusion between a share of the profits as profits, and a sum measured by a share of the profits; and the distinction becomes shadowy, difficult of application, and liable to be perverted to purposes of fraud and unfair dealing.
Some American cases, especially in New England, have applied the distinction to circumstances not embraced by any of the English cases (17 Mass. R. 197; 15 Mass. R. 370 ; 6 Pick. 335 ; 12 Cohn. R. 69); but most of these cases may be reconciled to Lord Eldon’s doctrine, by keeping carefully in view the distinctions between the rights of partners inter sese, and their rights as to third persons, and between nett profits and other proceeds. It may be seen, that in various instances of materials furnished by one, and labor by another, under an agreement to *318 divide the profits, only certain specified deductions were to be made before division, and that the result might well have been of profit to one and of loss to the other. In some others of these cases, it is possible that the usages of trade may have so fixed and ascertained the terms of association between parties engaged in a common enterprize, that, like those who ship' to India on half profits,, or seamen employed in the whale fisheries, they must have been known not to be by their agreement partners inter sese, and thus the implied notice may have taken from-third persons any higher rights than existed between the parties as.to themselves.
In our own case of Simpson vs. Feltz, (1 McC. Ch. 219) under an agreement which was substantially like the one now under consideration, in a contest between the parties themselves, the one who contributed services was held bound to sustain his proportion of a loss occasioned by fire, which consumed the goods. Judge Nott there referred Muzzy vs. Whitney (10 Johns. R. 226) and the cases there cited (which held an agent that received compensation, proportioned to a share of the profits, not to be a partner) to the circumstance that the profits were to arise from a mere isolated .transaction. That view, however, seems not to lies reconcileable with the general proposition that there may be partnership in a single transaction, where there is a participation of the profits thence arising, or with the circumstances of many of the cases to which the distinction has been applied.
In Bartlett vs. Jones, (2 Strob. 471) Judge O’Neall, delivering the opinion of the Court, recognizes the doctrine that an agent may, without being liable as partner, receive a compensation for his services, measured by the nett profits, where by agreement he is to have none of the general rights of a partner, although, from the necessity of the- cáse, he might be entitled to have an account of the profits to ascertain the measure of h'is compensation. But it will be observed that that was a case between the employer and a separate creditor of the agent, and the question was not whether there was a partnership in the profits, but whether there was a communion of the goods fur *319 nished by the employer before they had been sold. (See Story, § 27.) And although Judge O’Neall speaks of nett profits, Judge Evans, in his report, says that “ the amount of his compensation depended on the quantum of business done, but he was not to participate in the losses.” His compensation was to be a share in the excess of sales over the cost of the articles sold, and until they were sold, the goods remained the property of the employer.
This hasty reference to some of the learning which relates to the distinction urged by the defendants, was due to the earnestness and ability with which the case has been argued, and to the division which exists in the Court. But, after all, we may reserve for another occasion any opinion concerning what ought to be held under this distinction in a case of mere agency. The distinction properly includes only agents and servants, where the share given is intended to excite diligence. Mr. Cary, who has most zealously contended for the distinction, in his work on Partnership, uses arguments like these : A trader’s own interest may be supposed not to suffer him to give to his agent a greater share of the profits than the adventure would afford; by a sum proportioned to profits, the agent’s exertions may be best secured; if the adventure fails, creditors of the employer would be in a better condition than if a sum certain had been given as wages ; and if it succeeds, it is fair that the expenses of the business, including the labor of those who conduct it, should be paid before the separate creditors of the partners should be allowed to come in. Beyond compensation for services such as might be stimulated by reward proportioned to success, no case has carried the distinction, unless it may be the case of Perrine vs. Hankinson, (6 Halst. 181) where it was held that a party who was to receive, by way of rent, a portion of the profits of a farm or tavern, let to hire by him, ought not to be considered a partner in the concern. Those who furnish the stock in trade, or advance money, come not within the principles or circumstances of the cases upon which the distinction has been established.
If, then, it were clear, as it is not, that the Steinmyers were not *320 to receive nett profits as profits, but only as a standard of compensation for the use of their money and credit, we would not feel justified m extending this shadowy distinction so as to embrace them. Under the agreement which they made, they stipulated for one-half of the nett' profits of a trade; they have exercised in the business larger powers than our “ Act, concerning limited partnerships” (6 Stat. 578). allows to any but the general partners, and have taken a confession of judgment which a limited partner could not have taken. If they have not incurred the liability of partners, that- Act, with all its minute and careful provisions, was’ unnecessary, as its purpose might have been attained by a very simple agreement.
It is ordered that in this case a new trial be granted.
Evans, Frost, Withers and Whitner, JJ., concurred.
In the case of Pierson & Halsey, plaintiffs, the opinion of the
Court was also delivered by
Wardlaw, J.
This case is settled by the opinion which has just been read in the case of Daniel Pierson, against the same defendants.
As the jury have rendered a verdict for the plaintiffs, which, in conformity with the opinion of the Court, is right, it is ordered that the motion be dismissed.
Evans, Frost, Withers and Whitner, JJ., concurred.