On the trial before his Honor, Judge Saunders, on the Spring Circuit, at CAMDEN, to which county the case had been removed from the county of PASQUOTANK, the facts were substantially as follows: The plaintiff had a judgment against one Burgess, and an execution was issued thereon, and levied on the lumber in question as the property of Burgess, and the plaintiff purchased at the constable's sale. Burgess was the captain of the schooner Belle, on board of which the lumber was at the time of the levy; and the constable who made the levy testified that at the time he did so, Burgess claimed an interest in the property. Other witnesses were called for the plaintiff, who testified to Burgess's *Page 277 
claiming the lumber as his own; but they further stated that it was usual for all captains of vessels to speak of the cargoes on board, as theirs.
The defendant introduced Captain Burgess, who swore that he (293) chartered the schooner Belle by the month, and being anxious to procure freight for the West Indies, he applied to the defendant, who at first declined loading him, but on a second application, agreed that Burgess should purchase a cargo of lumber on his, Williams' account, and accordingly gave him an order to one Mr. Jarnagan, as follows:
"Dear Sir — Captain Burgess has permission to purchase a load for the West Indies, and draw on me for the amount at ninety days, or four months.
(Signed.) Sam'l Williams."
Burgess made the purchase of Jarnagan accordingly, and Williams furnished the supplies for the vessel, insured the cargo, and consigned it to Burgess, who was to take it to the West Indies and sell it to the best advantage, he agreeing to pay Williams the original cost of the lumber and the bill for supplies, and five per cent on the amount of the cost of the cargo and advancements; and the balance of the proceeds of sales, if any, he was to retain as freight. Burgess further stated that he was not responsible to Williams except as consignee, and that it was usual for owners of West India cargoes to consign to their captains; if the cargo had been lost, and the insurance could not have been collected, it would have been William's loss; and that the freight on lumber to the West Indies is generally equal to the cost of the cargo. S. S. Burgess and P. C. Williams, a son of the defendant, testified to the agreement between Williams and Burgess substantially as above; and Jarnagan testified that in the sale of the lumber by him, he knew only Williams as responsible to him, and that he drew on Williams for the amount, and he paid it.
His Honor, the presiding judge, instructed the jury that if they believed the testimony of Captain Burgess and young Mr. Williams, or either of them, Burgess had no interest in the lumber subject to execution, and they should find for the defendant. There was a verdict and judgment accordingly, and the plaintiff appealed to the Supreme Court.
The cases of Meyer v. Tharpe, 5 Taun. Rep., 74; Smith v. Watson, Barn. 
Cres., 401 (9 Eng. C. L. Rep., 122); Ex Parte Hamper, 17 Ves. Jun., 404;Reid v. Austin, 17 Mas. Rep., 197, and Turner v. Bissell, 14 Pick. Rep., 192, cited by the defendant's counsel (and the authority of which the plaintiff's counsel admit that they cannot dispute), fully support the position that the contract between the defendant and Burgess did not give the latter any interest in the lumber in question. It was not, therefore, liable to be levied on and sold as the property of Burgess under the plaintiff's execution; and he acquired no title by his purchase. The judgment must be affirmed.
PER CURIAM. Judgment affirmed.