HON. PIERPOINT ISHAM, }
HON. MILO L. BENNETT, } ASSISTANT JUDGES.

------

GEORGE N. BRIGHAM *v.* STILLMAN E. DANA.

*Contract.   Partnership settlement.*

A written contract, *q. v.*, by which the defendant was to, and did receive of the plaintiff two hundred and fifty dollars with which to go to California to engage in gold digging, for two years, during which time his earnings were to be divided with the plaintiff, construed as making the return of the money advanced dependent upon the result of the adventure, and as thus constituting the parties joint adventurers if not strictly partners.

To constitute a partnership it is not essential that all the parties should be liable to share indeffinitely in the losses.  If they participate in the profits and are liable to

bear, or be affected by the losses to only a limited extent, it will be sufficient. Nor, in a general partnership, is it essential that they should be proportionate joint owners of the property of the concern. The whole capital may, by a stipulation to that effect, be the property of one only of the parties, while the joint participation of all in the net profits may be such as to make them general partners.

The contract in the present case, q. v., mentioned no other business than that of gold digging, in which the defendant engaged upon arriving in California, but he abandoned it soon after and engaged in teaming and trading, in the profits of which the plaintiff claimed an interest. Held, from the correspondence between the parties, &c., that the plaintiff was entitled to an interest therein as well as in the profits of the gold digging.

The defendant while returning from California was taken sick, and in consequence thereof was subjected to expenses and loss of time after his return. Held, that in accounting for the net earnings he was entitled to an allowance for the expenses but not for the lost time.

A sum of money paid and received will not operate as a full settlement although the payer so intended it, and would not have paid it if he had not understood that such would be its effect, but in reference to which he made no such express condition, if the payee did not so understand it, and would not have received it upon such an understanding.

An apparent settlement would not be upheld if the party claiming the benefit of it stood in a fiduciary relation to the other, and in consequence thereof possessed superior knowledge respecting the subject matter of it, to the benefit of which the other party was equally entitled, if such knowledge was concealed from him and his assent to it obtained by misrepresentation.

ACCOUNT. The declaration alleged in the first count, that from the 16th of October 1849, to the 15th of January 1852, the plaintiff and defendant were partners in company and jointly interested and connected in carrying on the business of gold digging in California ; in the second count, that during the same time the defendant was bailiff to the plaintiff in the business of gold digging ; in the third count, that they were partners in company, jointly interested and connected in the business of freighting and selling provisions, goods and merchandise, and in digging gold ; in the fourth count, that the defendant was bailiff to the plaintiff of certain goods, chattels, wares and merchandise, and in the business of gold digging and of the profits thereof. The pleas of the defendant denied the existence of the relations alleged in the declaration, or that the defendant had received more than his just share of the profits, and alleged that the defendant had fully accounted to the plaintiff, &c. Trial by the court, —— Term, 1853,—POLAND, J., presiding. The plaintiff offered in evidence a written agreement, signed by

the defendant, and dated October 16, 1849, to the admission of which the defendant objected; but it was admitted by the court, and was as follows:

" I, Stillman E. Dana, of the town of Warren, Vt., agree that for the sum of two hundred and fifty dollars, to be paid to my full satisfaction by G. N. Brigham, on or before the 25th day of the present month, to go in the ship Argonaut to California, for the purpose of gold digging; and what I earn for the term of two years or more, provided it is thought best by the parties to tarry longer, shall be equally divided between myself, or heirs, and G. N. Brigham, or our heirs. The sum of two hundred and fifty dollars is to carry to and from Francisco or the place of destination. I agree further to have, in case of my decease, the amount taken out of any moneys or interest left by me, sufficient to pay the outfit; and the remainder, if any, is to be equally divided between my heirs and the said G. N. Brigham or his heirs. Also, if I am unsuccessful, and bring back only money enough to pay my outfit, it shall be so appropriated, and enough shall fall in the division to pay my outfit, at least, if accumulated, to the aforesaid G. N. Brigham or his heirs, to be duly delivered to order."

The plaintiff also offered in evidence a receipt, signed by the defendant, for two hundred and fifty dollars, dated October 16, 1849, the deposition of Luther P. Bullard, and three letters from the defendant to the plaintiff, one dated July 16, 1851, one dated July 17, 1850, and one dated October 20, 1850, to all of which the defendant objected, and they were received by the court, subject to all objections. The defendant offered in evidence a receipt, signed by the plaintiff, for three hundred and forty dollars, specified as being received on contract to California, and which the court found, as matter of fact, was more than the full sum of money paid by the plaintiff to the defendant, upon the execution of the written agreement of October 16, 1849, with the interest thereon, to the admission of which the plaintiff objected, but it was received by the court, subject to all objections. Upon this evidence the defendant insisted that the plaintiff was not entitled to recover upon either count of his declaration, but that judgment should be rendered in favor of the defendant upon the several issues joined; but the court rendered judgment that the defendant account, to

which and to their decision in receiving and considering the evidence offered on the part of the plaintiff, the defendant excepted.

Before the auditors the plaintiff introduced the contract above recited, and proved that on the 18th day of October, 1849, he paid to the defendant the sum of two hundred and fifty dollars in money, and took his receipt for the same, of that date ; and that a few days thereafter he paid defendant twenty-five dollars more, making in all two hundred and seventy-five dollars, which was paid, and received in fulfillment of said written contract. The receipt for the money was in the following words:

" Warren, Oct. 18, 1849.   Rec'd of G. N. Brigham, two hundred and fifty dollars, to my full satisfaction, for an outfit to California.                                 STILLMAN E. DANA."

In addition to the foregoing, the auditors reported the following facts.   The defendant sailed, and arrived in California on the 13th of March, 1850, and went immediately to " gold digging" in the mines, and continued thus occupied until September of the same year.   At this time he had accumulated, in gold dust, five hundred and sixty-five dollars.   In September, 1850, he went into the teaming and trading business, in partnership with a young man of his acquaintance of the name of Bullard, and continued in that business until he left California for Vermont, in November, 1851. The business of said partnership was conducted in or near " the mines," and was the supplying *miners* and other operatives about the mines, with implements for mining, food, clothing, and other necessaries.

The exact amount that the defendant earned in the teaming and trading business did not appear; but it did appear that when he arrived in New York, in January, 1852, the defendant had, in gold, one thousand seven hundred and eighty-eight dollars and two cents.   Allowing two hundred dollars for the return voyage, which is deemed a reasonable estimate, the defendant had, when he left California, one thousand nine hundred and eighty-eight dollars and two cents as the aggregate of all his earnings in California.

The defendant was taken sick on his return, with what is termed " the isthmus fever," and did not recover so as to be able to attend to any business of profit to him, until the fall of 1852, and

he arrived home on the 18th of January, 1852, quite sick with the fever. He was very destitute of clothing when he arrived in New York, and there expended about seventy-five dollars for clothing necessary for his comfort; so that when he arrived home he had in money, as the entire avails of the " California expedition," after deducting all expenses of the journey, clothing and incidentals, one thousand six hundred and ninety-three dollars and two cents.

Soon after he arrived home, the plaintiff called upon him for a statement of the avails and income of the expedition, which the defendant declined to make, but informed the plaintiff that he claimed the contract was invalid, and could not be enforced against him. The plaintiff reasoned with him, and told him that the defendant should make a true and full disclosure of all he had realized under the contract, and if there were circumstances calling for allowance, he would consider them; but the defendant declined to make any disclosure in the premises. The defendant told the plaintiff that he (the plaintiff) " should not be the loser "—that he would pay him the money he advanced and interest thereon at the rate of nine per cent., (it being mutually understood that the plaintiff had hired the money for the outfit, and paid that rate of interest;) the plaintiff told him that he should, in that way, get only what he had paid out, and nothing for his risk and trouble; the defendant said he would pay him five dollars for his trouble, and counted out three hundred and forty dollars, which was two hundred and seventy-five dollars and interest to that time at the rate of nine per cent., and five dollars (as defendant asserted) for the plaintiff's trouble in the matter. The plaintiff took the money, and executed a receipt in the following words:

" Warren, Jan'y 28th, 1852. Received of Stillman E. Dana three hundred and forty dollars on contract to California.

G. N. BRIGHAM."

After the receipt was handed to the defendant, he insisted that the words " in full " should be inserted. At the time he paid the three hundred and forty dollars, he denied his liability to carry out the terms of the contract, and distinctly told the plaintiff that he should pay him no more; but it did not appear that the plaintiff *assented* to take that sum in full discharge of the

defendant's liability on that contract. The defendant meant and supposed the payment to be in full discharge of his liability, and would not otherwise have paid it at that time, but he made no such express condition; and the plaintiff had not offered to take that sum, nor did he suppose it was offered with that condition.

The auditors found that if the defendant had been in good health from the time he came home in January, 1852, until the following autumn, his time would have been worth to him one hundred and twenty-five dollars, and that he paid for board, nursing and medi-cine, during that time, and while he was so sick of the "isthmus fever," the sum of one hundred and eighty dollars, and that he carried with him to California twenty-five dollars of his own money, which was expended in the journey.

The defendant, during the attempt to settle, gave the plaintiff to understand that his profits were not of any considerable amount, and from what little he could be made to say, the plaintiff would be led to suppose they were much less than they actually were.

The auditors stated and allowed the account as follows :

Money the defendant had on his return,..............$1,693 02
From this deduct,

  1. For *time* of defendant's sickness,.....$125 00
  2. Money paid out for board, &c.,...... 180 00
  3. Money of his own, expended, ....... 25 00
              ————— $330 00

Leaving a balance of .........................$1,363 02
  One-half of which is,..... .........$681 51
  Paid by the defendant to the plaintiff, ... 340 00

Leaving a balance of ...................$341 50
  Interest to March 14, 1854, ........... 44 39

Making amount to be accounted for to the pl'ff, $385 90

The county court, March Term, 1854,—POLAND, J., presiding,— rendered judgment, upon the report of the auditors, in favor of the plaintiff for the balance reported. The plaintiff excepted to the allowance in favor of the defendant for the time and expenses of his sickness after his return home.

The letters of the defendant, above referred to, contained statements respecting the business in California in which he was from time to time engaged, giving apparently as full a relation respecting the teaming and trading business while he was engaged in that, as in reference to the gold digging while he was engaged in that. [The deposition of Bullard was not among the papers furnished to the reporter.]

*Washburn & Marsh*, for the defendant.

*Peck & Colby*, for the plaintiff.

The opinion of the court was delivered by

REDFIELD, CH. J. It is obvious that the principal question in this case is, whether the contract between the parties makes the return of the money advanced dependent upon the event of that amount being realized in the contemplated adventure, over and above all losses and expenses. For if not, then it is a mere loan, and the only risk incurred by the plaintiff is the solvency of the defendant, and the agreement to divide the profits of the adventure is either a cloak for usury, or an unconscionable extortion which the law will not sanction, according to the cases of *Burton* v. *Blin*, 23 Vt. 151; *Morse* v. *Wilson*, 4 T. 353; *Gordon* v. *Hobart*, 2 Story 243, and many others. But if the money was really hazarded in the adventure, and its return depended upon the net results of such enterprise, it is not a contract which the law refuses to sanction, and if not a strict partnership, it is a joint adventure, in the result of which the plaintiff has such an interest as will enable him to call the defendant to account in this form of action. And we do not perceive but the claim is correctly described in the declaration in some of the counts, for it seems to be put in all the more common forms of declaring upon such and similar undertakings. The defendant is charged as partner and as bailiff and receiver of goods and money to plaintiff's care, or to the joint profit of the plaintiff and the defendant. If then the plaintiff really is entitled to demand an account of the enterprise, and to have a portion of the money raised by defendant during such adventure, we do not see why he is not correctly described as having been the receiver of such

money as now in justice and equity belongs to the plaintiff under the contract. In looking into the contract by the light of attending circumstances, and the conduct of the parties in carrying it into effect, we think,

I. There is no undertaking, either express or implied, to refund the money unless the defendant obtained enough from the adventure, over and above expenses and losses, to enable him to do so. Very little is to be inferred, doubtless, from the forms of expression and the terms used in a contract so inartificially drawn, where the purpose evidently was to express the substance of the contract without reference to any formality, but some conjecture arises even in such a case from the form of expression. The contract speaks of the outfit as being " paid to the full satisfaction " of the defendant, or to be so paid at his entering upon the adventure, which would seem to imply that it was not a loan. But in regard to the return of the money, the same form of expression is indeed used: " sufficient to pay the outfit," " and enough shall fall ( to the plaintiff) in the division to pay my outfit," which would rather imply that it might be regarded by the parties as a debt. But this form of expression is consistent enough with the idea that the plaintiff's advance was first to be refunded to him in the distribution of the avails of the undertaking, and this the contract evidently does stipulate for. And this is altogether consistent with the contract creating a strict partnership. And the fact that the plaintiff was also to have interest upon the money advanced, at the same rate which he paid for it, will not destroy its character of a partnership. For it is common for one partner to advance money and stipulate that he shall first be paid his money and interest, and this leaves it none the less a partnership. Nor will the question of partnership be affected by the amount advanced, whether more or less, unless the sum is so small as to imply fraud, or duress, or extortion. And it does not occur to us that there is any such disparity between the sum advanced and the service of the defendant, which is put as its equivalent in the contract, as to imply any want of freedom on the part of the defendant. The transaction is of a class which will scarcely bear much comparison with the ordinary transactions of life. It concerned a business which has proverbially and justly been denominated " the gold fever" and " the gold mania."

Brigham *v.* Dana.

Men were almost literally insane in regard to it, as indeed most of us are, more or less, upon this subject, in some form. But this, so far from justifying courts in refusing to carry any contract into effect which has relation to the subject, should enable us more readily to comprehend and understandingly to interpret the stipulations of the parties.

There is then, as we said, no stipulation to refund the money advanced, absolutely and without reference to so much being earned. The stipulation, which is claimed to amount to this, is that in case of decease, the defendant agrees that this sum shall be "taken out of any money or interest left by him," but this is just as well understood of the money or interest left of the California enterprise, as of all his estate. And the very next sentence shows that the parties so understood it, for it provides that the "remainder, if any, shall be equally divided between the parties," which of course could not mean his whole estate. All the other stipulations are more consistent with this view than with any other. For it says the outfit is to be first refunded ; "enough shall fall in the *division* to paying the outfit, *if accumulated.*"

The plaintiff calling for the money advanced before the time expired is nothing provided for in the contract, even by implication, nor do we think it makes much for the defendant's view in regard to the construction. It was natural for the plaintiff to desire to get back his advance as soon as he could, and the defendant's mere promise to refund as soon as he could and not doing so amounts to but little as evidence of the practical construction of the parties.

II. It does not seem to be requisite to the constitution of a strict partnership, that each partner as between themselves, should be liable to share indefintiely in the losses of the concern. An agreement to share in the profits and consequently in the losses, as they affect the adventure, will ordinarily be held sufficient to constitute a strict partnership. *Buckman* v. *Barnum,* 15 Conn. 67 ; *Loomis* v. *Marskell,* 12 Conn. 70 ; *Bond* v. *Pittard,* 3 M. & W. 357. And in the present case in the view we have taken of the proper construction of the contract, it is obvious the plaintiff was liable to be affected by the losses to the full extent of his capital and the anticipated profits.

III. It is certainly not necessary to the constitution of a general partnership, that the partners should be proportionate joint owners of the property belonging to the concern, or some of them, and out of which the profit is expected to arise, although that is the more common condition of the title, and the natural implication in the absence of some stipulation to the contrary. But it is not uncommon, and the cases certainly sanction a stipulation that the capital of the concern shall vest and remain in one or more of the number less than the whole who may have furnished it. *Ex parte. Hamper*, 17 Vesey 404. All that seems indispensible upon this head is that the parties shall be jointly interested in the profits or affected by the losses or net profits of the concern.

So that taking the case in all its bearings, we do not see why it may not be regarded as a partnership in a single adventure. Collyer on Part., Sec. 170.

IV. In regard to the account, although the terms used in the written contract strictly import nothing more than the business of " digging gold," yet it seems from the correspondence of the parties, that the defendant regarded the change as still continuing the business for the joint interest, and to this the plaintiff seems to have assented. He claimed the account of the defendant's whole earnings soon after he came home, and no question seems ever to have been made between the parties but he was equally a partner in the whole business. We think, though this is evidently going somewhat beyond the terms of the written contract, it must be regarded as coming within the account to be rendered under the judgment. This portion of the account is specifically claimed in the declaration, and the evidence is all submitted to the court upon the trial of the issue to account, and no question is raised in regard to the extent of the partnership, and we must presume from the evidence and the general judgment to account, that all facts were proved which the testimony tended to prove, and which are essential to defendant's liability to account upon all the counts. In this view we do not perceive how the defendant can expect to escape from the account of the profits of the furnishing business.

2. In regard to the items for expenses of sickness and time there is certainly some difficulty.

We are inclined to say, that as the defendant had the fever before he arrived at home, and might properly have stopped on the way and regained his health before coming home, when the expenses of his sickness would properly have formed a portion of his expenses in returning home, these should be deducted from the gross avails, as a necessary incidental loss or expense.

What is said in the contract in regard to the outfit being " to carry to and from California," really is no restriction upon the amount, but only to designate the purpose of the advancements, that it was intended for and was to be applied towards the expenses going and coming.

And the limitation as to time is very indefinite ; two years, or more if thought best by the parties. If taken sick or meeting with any accident upon the way home, the defendant is by reasonable necessity detained, his expenses must be borne out of his earnings till he can fairly get home or ought to reach home by the use of reasonable diligence. Till he gets well enough to travel he can hardly be said to get home. The plaintiff should no more be allowed to deprive the defendant of his claim to the expenses of the sickness because he came home before he should have done, than if he had done it under mental aberration, which certainly could not bind the party.

3. But we have not been able to perceive any ground upon which his time can be reckoned against the money in his hands. He was in no event to be allowed for his time, and we think this item must be disallowed.

4. In regard to the settlement and receipt, which seems to have been urged before the auditors as one ground of defense, and which is here not waived, we do not well see how it can prevail.

1. It was not understood by the parties as any settlement. The defendant so intended it, but this seems not to have been made known to the plaintiff and he did not so intend it, and would not have accepted the money if he had known that it was upon any such condition.

2. The defendant stood in such a fiduciary relation and possessed such superior knowledge in regard to the business, and this obtained in the business under such circumstances that the plaintiff was equally with himself entitled to its benefit, that the law will

not sanction a settlement induced by positive misrepresentation, and probably not one induced by suppression of important facts, calculated and intended and known to have misled the plaintiff. So that upon both grounds the settlement, as it is called, cannot avail the defendant.

Judgment reversed and sum allowed for time deducted, and judgment on report for the remainder.