### A. & W. E. DURYEA *v.* LOWELL T. WHITCOMB.

*Partnership. Book account.*

An agreement between parties in regard to the transaction of a certain business, wherein all furnish specified proportions of the capital, jointly own the property purchased, which is to be sold for their joint and mutual benefit, and each is to contribute his skill and assistance to the business, and share in specified proportions in the final profit or loss thereof, which are to be ascertained at the close of the business: an agreement of this kind will, as between the parties themselves, create a partnership.

Such an agreement, in the absence of an express stipulation or circumstances to show the contrary, will still, as between the parties themselves, constitute a partnership, even though nothing be said by them about a partnership, and even though they are not aware that the legal effect of the agreement is to create one.

The act "relating to the action of account," approved November 18, 1852, does not extend to cases where the entire account relates to partnership dealings; *Green & Roberts* v. *Chapman et al.*, 27 Vt. 237.

BOOK ACCOUNT. The auditor reported that on the 20th of August, 1854, the defendant, the plaintiffs and Isaac B. Lewis,

made an agreement in the city of New York, where both the plaintiffs and Lewis resided, and were engaged in the purchase and sale of potatoes, that the defendant, who resided in Wells River, in this State, should purchase potatoes during that season in Vermont and New Hampshire, taking the advice of the plaintiffs and Lewis, from time to time, in regard to the price, amount and market of such purchases; that the defendant was to devote his whole time to this business, and was to have six cents per bushel to cover the expense of buying and carring the potatoes, which sum of six cents per bushel was to be added to the cost of the potatoes; that if it should become necessary in the course of such purchases for the defendant to visit other parts of the country, the expense thereof should be borne, one-half by the defendant, one-quarter by Lewis, and one-quarter by the plaintiffs; that the defendant was to send the potatoes purchased by him to such market as he should think best, advising however, on this subject, with Lewis and the plaintiffs; that all the potatoes, which the defendant should purchase and send to New York, were to be taken by Lewis or the plaintiffs, and sold at the highest market price by the one who should receive them, such party charging nothing for selling, and each to be accountable for their own sales; that if the defendant chose to send any of the potatoes purchased by him to any other market than New York, he should be accountable for the amount of the sales thereof; that all the expenses of transportation of the potatoes to market were to be paid by the defendant, and added to the general cost of the potatoes, and at the close of the season the profit or loss on all the potatoes purchased by the defendant, were to be apportioned among the parties as follows: to the defendant one-half, to the plaintiffs one-quarter, and to Lewis one-quarter; and that if the defendant at any time needed more funds than he had for such purchases, he might draw on Lewis, or on the plaintiffs, in such a manner and to such an extent that the defendant should furnish one-half of the money for such purchases, the plaintiffs one-quarter, and Lewis one-quarter.

The auditor further reported, that in pursuance of this agreement, potatoes were purchased by Whitcomb, and sent to market and sold by the other parties, and that upon an adjustment of the

claims of the plaintiffs against the defendant, arising out of such purchases and sales (which were the only matters embraced in the plaintiffs' account), including the defendant's share of a loss in said business, computed according to the terms of the agreement, he found that the defendant was indebted to the plaintiffs in the sum of eight hundred and forty-eight dollars and forty-five cents.

The auditor further reported, that at the time the above mentioned arrangement was made, nothing was said between the parties about a partnership, and the auditor found from the foregoing facts that neither of the parties at that time supposed they were forming a partnership, or intended to form one.

The defendant insisted before the auditor, as well as before the county court, that this arrangement constituted a partnership between him, the plaintiffs, and Lewis, and claimed that the affairs of such partnership could not be adjusted in this action.

But the county court rendered judgment upon the report for the plaintiffs for the amount reported by the auditor, to which the defendant excepted.

*C. C. Dewey* and *A. Underwood,* for the defendant.

*A. M. Dickey* and *C. B. Leslie,* for the plaintiffs.

ALDIS, J. As this is a case where the rights of the partners *inter se* merely are concerned, where no question as to third persons is involved, the criterion to determine whether the contract is one of partnership or not, must be; what did the parties intend by the contract which they made as between themselves.

If we regard the agreement itself, as set forth in the auditor's report, it is clearly a partnership. The agreement was verbal, but by the finding of the auditor may be considered as in writing at this time. Giving to the contract, as stated in the report, the same construction that we should to articles in writing of the same tenor, it appears to us to have every ingredient of a partnership.

The parties all furnish a share of the capital, Whitcomb one-half, Lewis one-quarter, the Duryeas one-quarter. They jointly

own the property when purchased. It is purchased in order to be sold again for their joint and mutual benefit, thereby negating the idea of separate control and disposition of their interests in the property purchased, and of separate interests in the proceeds. Each is to share in the final profit or loss ; at the close of the season the profits or losses are to be divided, to Whitcomb one-half, to Lewis a quarter, to the plaintiffs a quarter. Each is to aid in selling, and to contribute his aid, skill and knowledge to get the highest price.

The case of *Griffith & Co.* v. *Buffum & Ainsworth*, 22 Vt. 181, where the defendants were held to be partners as between themselves, is not so strong to show a partnership as this ; for there the agreement to share in the losses seems to have been implied, whilst here it is expressed.

The fact that each was to be accountable for his own sales, amounts only to this, that each should sell for cash ; if either did not, he was to be accountable for his sale as cash. The proceeds of the sales by each would belong to them jointly, not severally. This provision is as consistent with an agreement for a partnership as with any other ; *Noyes* v. *Cushman*, 25 Vt. 390. So that Whitcomb was to have the control of the potatoes, and to run them to the best market, taking the advice of Lewis and the Duryeas on the subject, is, when we consider where the parties resided, where the potatoes were to be bought and to what markets they might be sent, and that Whitcomb was to buy them, as consistent with a contract of partnership as with any other.

I. This agreement does not belong to the class of cases where the parties are jointly interested in certain proportions in the property purchased, but not in the final profits or losses; where each of the part owners has the power of separate disposition of his interest. Such is the case of *Coope* v. *Eyre*, 1 H. Bla. 37, a leading illustration of the class.

II. It is not of the class where a party receives a portion of the profits as a compensation for his labor as an agent or servant. Each furnished a portion of the capital, each was a part owner of the property when purchased, and of the proceeds when sold. Neither could be said to be the servant or agent of the other. An agent who receives a share of the profits as a compensation

for his services, is not expected to share in losses; if there are no profits he loses his labor or wages, but he loses no more, though there are further losses to be borne by the partners.

Of this class is *Kellogg* v. *Griswold*, 12 Vt. 291; and *Mason* v. *Potter*, 26 Vt. 722.

III. Nor is it a case where a share of the gross or net earnings is to be paid as a compensation for the use of capital, or as rent; and where the party receiving such compensation has no interest in the business, the property and the proceeds, but only a right of action against the other parties. Here the parties jointly contributed capital, labor and skill, were joint owners of the property from the time of its purchase till the final division of profits or loss. No severance of their interests could be had, no ascertainment of their respective shares or interests could be made till a final accounting. They must have relied on the property and its proceeds to secure to each his final share, no matter by whom the property might be sold, or its proceeds held.

Hence the cases of *Tobias* v. *Blin*, 21 Vt. 544; *Bowman et al.* v. *Bailey*, 10 Vt. 170; and *Bradley* v. *Ambler*, 6 Vt. 119; do not apply. Of the same class are *Denny* v. *Cabot*, 6 Met. 92; *Holmes* v. *The Old Colony R. R. Co.*, 5 Gray 58; *Loomis* v. *Marshall*, 12 Conn. 69, and various other cases cited by counsel.

It is said, however, that the auditor finds that the parties did not intend to form a partnership, and that such intention must govern.

It is with contracts of partnership as with all other contracts, that as between the parties to them their intention must govern. Hence an express stipulation in a contract, that the parties thereto shall not thereby become partners, is binding and of great significance in giving construction to the instrument, especially if the terms are doubtful or susceptible of more than one meaning.

1. It is to be noted that in this case there was no such express stipulation. The auditor's report says, " at the time of the arrangement in New York, August 20, 1854, nothing was said about a partnership, and neither of the parties at that time supposed they were forming a partnership, or intended to form a partnership." As nothing was said about a partnership, the

parties could not have stipulated that their contract should not create one.

2. The report states what was the arrangement of August 20, 1854. That was a contract for a partnership. If their contract was for a partnership by necessary legal construction, (which we have found that it was,) and they intended to make the contract (and this appears from the report), the legal effect of their contract could not be varied by their not supposing it to be what it was. The further statement in the report that they did not intend to form a partnership seems inconsistent with the other facts. One is at a loss to perceive how the auditor could discover such an intention when nothing was said about a partnership, and when the contract, which they made, was a partnership. Probably the fair construction of the report is that the parties were not aware of the legal extent and obligation of the contract into which they entered.

As the contract imports a partnership, we must hold in the absence of any express stipulation and of any other circumstances to show the contrary, that they intended to create the relation which the contract expresses.

IV. The action is book account. The accounts presented for adjustment are all partnership accounts. None of them are properly chargeable on book. The case of *Green & Roberts* v. *Chapman*, 27 Vt. 236, has settled the construction of the statute of November 18, 1852, viz: that where there are no items properly chargeable on book, the action of book account will not lie for the adjustment of other items proper for the action of account.

The result is, that the judgment of the county court is reversed, and judgment rendered for the defendant to recover his costs.