Clark v. Smith.

ANDREW J. CLARK AND OTHERS *v.* THOMAS SMITH.

*Partnership.* `Conversion.`

C., who owned a mill, farm, and wood lot, agreed with F. that F. should cut logs on the lot, haul them to the mill and manufacture them into chair-backs, or such other goods as C. might direct, should furnish his own oil, &c., and carry on the farm in connection with the mill; that C. should furnish timber in the lot, put the mill in order, market the goods and make collections ; and that the taxes on the mill and farm, the expense of cutting and hauling the logs, the freight on goods to market, and the proceeds of the goods, farm and such custom sawing as might be done should be equally borne and divided between them. *Held*, that as by the contract F. was to have, not a specific interest in profits as such, but a stipulated proportion of the proceeds as compensation for his services, there was no partnership.

F. took possession under the contract, cut and hauled logs, and manufactured chair-backs, which he stuck up on the mill premises. An undivided half thereof was attached at suit of S. as the property of F. by lodgment of a copy of the writ in the town clerk's office. The interest attached was afterwards sold on execution and came to the hands of S., and S. sold the entire property, but before he sold it A. and others purchased C's interest therein. In trover by A. and others against S., *held* that as the property was not removed on attachment, and not until the sale thereof by S., there was no conversion until after the sale by C., and that the action would lie.

67

TROVER for a quantity of boards and chair-backs. The facts were agreed to be as follows :

On January 1, 1878, Damon E. Cheney, who then owned a mill, farm, and wood-lot in Halifax, agreed with Frank S. Fairbanks that Fairbanks should cut logs on said lot, haul them to the mill, and manufacture them " into chair-backs, or other kinds of manufactured wares " such as Cheney might " deem the most profitable ", should carry on the farm in connection with the mill, and furnish his own oil, files, &c. ; that Cheney should furnish timber in the lot, put the mill in running order, market the manufactured goods, and make collections ; and that the taxes on the mill and farm, the expense of cutting and hauling the logs, the freight on goods to market, and the proceeds of the goods, of the farm, and of such custom sawing as might be done, should be equally borne and divided between them. Fairbanks took possession under the agreement, cut and hauled logs, and manufactured the boards and chair-backs in question therefrom, and stuck them up in the mill and mill yard. On August 27, the defendant caused one undivided half of the boards, &c., to be attached as the prop·erty of Fairbanks, by lodging a copy of the writ, &c., in the town clerk's office, and afterwards on September 21, caused the same to be sold on execution in part to himself and in part to Hogan, whose interest he afterwards purchased. On October 7, the plaintiffs purchased all of Cheney's interest in the property of Maynard A. Cheney, to whom Cheney had sold it on September 13. In December the defendant sold the property for $110, and offered Cheney one half the proceeds. It was agreed that the court should determine the value of the property by parol evidence.

The cause was heard at the September Term, 1879, when the court, ROSS, J. presiding, found the value of the property, with interest, to be $134.74, and rendered judgment for the defendant for his costs ; to which the plaintiffs excepted.

*James M. Tyler* and *C. B. Eddy*, for the plaintiffs.

Fairbanks and Cheney were not copartners or joint owners of the property, but partners in the proceeds of the sales. The delivery of logs to Fairbanks was a bailment, *locatio operis faciendi.*

The case is like *Buckmaster* v. *Mower*, 21 Vt. 204, and in principle like *Wish* v. *Small*, 1 Camp. 331. And see *Clement* v. *Hadlock*, 13 N. H. 185 ; *Loomis* v. *Marshall*, 12 Conn. 69 ; *Cutler* v. *Winsor*, 6 Pick. 335 ; *Turner* v. *Bissell*, 14 Pick. 192. It is incumbent on the defendant to show where and by what particular act Fairbanks became joint owner with Cheney.

*A. A. Butterfield* and *Davenport & Eddy*, for the defendant.

Fairbanks and Cheney were partners by the terms of their contract. To constitute a partnership there must be community of interests—a sharing of profits and losses, or a sharing of profits as affected by losses. Parsons Part. 42 *et seq. ; Chapman* v. *Devereux*, 32 Vt. 616 ; *Kellogg* v. *Griswold*, 12 Vt. 291 ; *Brigham* v. *Dana*, 29 Vt. 1.

If they were not partners, they were joint owners, and Fairbanks' share could be reached by his creditors. *Frost* v. *Kellogg*, 23 Vt. 308 ; *Hurd* v. *Darling*, 14 Vt. 214 ; *Aiken* v. *Smith*, 21 Vt. 172.

If Fairbanks had no interest in the property at the time it was attached, the defendant converted it by attaching it. Cheney then owned the property, and he is the only one who could maintain this action.

The opinion of the court was delivered by

VEAZEY, J. The first question is as to the ownership of the boards and chair stock attached, as between Damon E. Cheney and Fairbanks. Cheney, owning the timber lot and mill, entered into a contract with Fairbanks by which the latter was to cut and draw in the logs, and saw and manufacture them " into chairbacks or other kinds of manufactured wares that the said Cheney may deem the most profitable", furnishing his own oil, &c., after the mill was put in running order by Cheney. Cheney was to market the manufactured goods and make the collections. They were to divide the freights from the mill to the market and the expense of cutting and delivering the logs at the mill. After deductions were made for these purposes, then the balance of the proceeds was to be equally divided. This is what the contract

was in effect so far as it pertained to the logs cut on Cheney's lot. The other parts of the contract are not involved in this case, only so far as they are to be considered in giving construction to this part. The instrument was not a lease in form or substance so far as it pertained to the logs. It was an agreement by which Fairbanks was to do certain work for Cheney, for an indefinite time, and as the work was to be in the production of certain wares for market, the parties agreed that Fairbanks's compensation should be a portion of the proceeds as the goods were sold. The lumber and the mill were Cheney's ; he was to direct in the manufacture, market the products, make the collections and pay half the proceeds to Fairbanks. The duty of the latter was to manufacture the lumber under Cheney's direction. He reserved no control of the products, no voice in the sale. The agreement as to his compensation was not that he should have a share of the profits, but a share of the proceeds of the sale without calling the raw materials anything. Fairbanks was to have a given sum for his labor, to be measured by the amount of proceeds. There is a clear distinction to be found in the cases involving the question, between agreements by which the parties have a specific interest in the profits themselves *as profits*, which makes a partnership, and such as give to the party sought to be charged as a partner, not a specific interest in the business or profits, as such, but a stipulated proportion of the proceeds as a compensation for his labor and services. Ex parte *Hamper*, 17 Ves. 404 ; *Loomis* v. *Marshall*, 12 Conn. 69 ; *Turner* v. *Bissell*, 14 Pick. 192 ; *Dry* v. *Buswell*, 1 Camp. 329 ; *Muzzy* v. *Whitney*, 10 Johns. 226 ; *Wilkinson* v. *Frazier*, 4 Esp. N. P. 182 ; *Harding* v. *Foxcroft*, 6 Greenl. 76 ; *Rice* v. *Austin*, 17 Mass. 197 ; *Baxter* v. *Rodman*, 3 Pick. 435 ; *Cutler* v. *Winsor*, 6 Pick. 335. This case comes under the latter category.

But the defendant claims that the conversion was by the attachment when Damon E. Cheney owned the property, and that no one else could maintain this action against the defendant, even though Fairbanks had no attachable interest in it. As we understand the agreed statement of facts, the property was not removed when attached and sold by the sheriff, the attachment having

been made by copy left at the town clerk's office, but it remained there on Cheney's premises undisturbed until it was sold by the defendant in December. In the September previous, said Cheney sold it to Maynard A. Cheney. In October the latter sold it to the plaintiffs. Therefore the plaintiffs had become the owners before it was interfered with by anybody, except by an attachment and sale without right. Under such attachment and sale, and as the property still remained undisturbed, there was no occasion for the real owners to move in the matter ; but when the defendant took the property and sold it, this was a conversion as against the actual owners, who were the plaintiffs, and the right of action then accrued to them. *Irish* v. *Cloyes*, 8 Vt. 30.

The result is that the judgment of the County Court is reversed, and judgment for the plaintiffs for the value of the property, including interest as found by the County Court.