FARMERS' EXCHANGE *v.* J. D. BROWN ET AL.

November Term, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed January 4, 1934.

*Webster & Webster* for the excepting defendant.

*P. C. Warner* for the plaintiff.

MOULTON, J.   Brown and Pelkey entered into a verbal agreement whereby Pelkey was to operate Brown's farm "to halves." The only testimony concerning this agreement was given by Brown, on examination by plaintiff's counsel, as follows:

"Q. And did you, during the years 1925-1926 have a farm in Franklin which was carried on by a man named Henry Pelkey?   A.   Yes, sir.

Q. What arrangement did you have with Mr. Pelkey with respect to carrying on this farm? A. We took it to halves.

Q. When you say 'took it to halves,' do you mean that you received half the milk checks?   A. Yes, sir.

Q. Half of all the produce raised on the farm? A.   Yes, sir.

Q. And how about the expenses?   A. He was to pay half, of course.

Q. That is, he was to participate equally in losses and profits?   A.   Yes, sir.''

During the continuance of this arrangement, Pelkey purchased from the plaintiffs, on credit, certain quantities of grain for use on the farm.   The purchases were charged to Brown and Pelkey.   Brown paid half of the account, and this action was brought against both parties to recover the balance.   The verdict and judgment were for the plaintiffs, and the case is here on Brown's exceptions.

The court instructed the jury that the agreement, as given in the testimony above quoted, constituted a partnership between the defendants.   This instruction is challenged by an exception.

An agreement to share in the profits and losses of an adventure is an essential element of a partnership, and, ordinarily, is sufficient to constitute the parties to such agreement partners.   *Brigham* v. *Dana*, 29 Vt. 1; *Noyes* v. *Cushman*, 25 Vt. 390, 396; *Duryea* v. *Whitcomb*, 31 Vt. 395, 398; *Chapman* v. *Devereux*, 32 Vt. 616, 619; *Styles* v. *Shanks*, 46 Vt. 612, 616. It is not necessary that each party shall furnish a share of the capital or property which is to become the stock or subject-matter of the business, or be a joint owner of it.   The capital

68

of the association may vest and remain in one of the members. The indispensable constituent is that the parties shall be jointly interested in the profits and affected by the losses of the venture. One may furnish the capital or stock and another contribute his labor and skill. *Brigham* v. *Dana, supra,* page 10; *Griffith* v. *Buffum,* 22 Vt. 181, 184, 54 A. D. 64; *Duryea* v. *Whitcomb, supra; Styles* v. *Shanks, supra.*

But sharing in the profits and loss of the business is not always decisive of the existence of a partnership, as between the parties, because it may be merely an arrangement with a view to compensation for services rendered by one to the other, the amount of which is to be dependent upon the success of the business. *Morgan* v. *Stearns,* 41 Vt. 398, 405.

■ There is a clear distinction between agreements whereby the parties have a specific interest in the profits *qua* profits, and agreements which give to the person sought to be charged as partner, not a specific interest in the business or profits, but a stipulated proportion of the proceeds as compensation for his labor and services. The former constitute a partnership; the latter do not. *Clark* v. *Smith,* 52 Vt. 529, 532; *Beach* v. *Boynton,* 26 Vt. 725; *Tobias* v. *Blin,* 21 Vt. 544, 548; *Bowman* v. *Bailey,* 10 Vt. 170, 172.

It is said in *Walworth* v. *Jenness,* 58 Vt. 670, 673, 5 Atl. 887, that the cases involving contracts for carrying on a farm on halves may conveniently be divided into three classes: (1) Those in which the contract is held to make the owner and occupant tenants in common of the crops and to give the occupant no interest in the land itself but only a right to enter upon it for the purpose of carrying out his contract; (2) those in which the contract is held to be a lease and so to vest the entire interest in the crops of the occupants; and (3) those in which the contract is held to make the parties tenants in common of the crops and also to give the occupant an interest in the land. The first of these classes is regarded as in the nature of a contract to perform labor on the land.

■■ The evidence did not necessarily import such a contract as would make Brown and Pelkey partners. The witness testified that Pelkey carried on the farm "to the halves," under an arrangement that each party should have half of the milk checks and produce, and pay half of the expenses. The last question, as framed, might reasonably be construed as calling

for his construction of the agreement and not for the terms of it. The phrase "that is," by which it was prefaced, showed that it had reference to the answers to the preceding questions, and the reply of the witness might reasonably be taken as a statement of his understanding of the purport of his previous testimony, and not as a recital of a specific agreement that all profits and loses should be shared. If the question and answer stood alone, the charge might have been justified, but the testimony is not to be considered piecemeal, and apart from the context, but as a whole, together with reasonable inferences to be drawn therefrom. *People's Nat. Bank* v. *Brunelle*, 101 Vt. 42, 46, 140 Atl. 160; *Woodhouse* v. *Woodhouse*, 99 Vt. 91, 109, 130 Atl. 758. From the evidence, taken as a whole, it would be possible reasonably to infer that the agreement was one for carrying on the farm on shares, of such a nature as to constitute a contract for labor and services. The construction of the testimony and the meaning of the witness were for the consideration of the jury, and they should have been required to decide under proper instructions, whether the terms of the contract were such as made the parties to it partners, or merely provided that Pelkey was to receive, as compensation for his labor and skill, one-half the income from the farm, and should pay one-half the expenses.

██ It is true that at the close of the charge the court asked the jury to find whether there was a partnership. But since it had previously given what amounted to a binding instruction that a partnership existed, the error was not cured. Where there are two inconsistent instructions it will be taken that the jury have felt that they are at liberty to follow either of them. *Ide* v. *B. & M. R. R. Co.*, 83 Vt. 66, 85, 74 Atl. 401; *Garfield* v. *Passumpsic Tel. Co.*, 91 Vt. 315, 325, 326, 100 Atl. 762. Neither did the instruction that sharing profits and losses "are two of the principal elements of a partnership" set the matter right. Nothing more was said concerning the qualifications of the rule, and the jury were left in the dark as to the distinction between a contract for a partnership, and one providing for compensation for labor and services.

██ There is nothing in the record to show that the two defendants held themselves out as partners in their dealings with the plaintiffs, so as to estop themselves from proving the true nature of their contract.

■ The defendant presented a series of requests to charge and excepted "to the failure of the court to charge as requested in each of his several requests." This exception is too general to require attention, as we have many times decided. It is necessary to cite only a few of the cases. *Temple* v. *Duffy,* 96 Vt. 114, 118, 117 Atl. 101; *McAllister* v. *Benjamin,* 96 Vt. 475, 491, 121 Atl. 263; *Town of Bristol* v. *Bristol R. R. Co.,* 91 Vt. 223, 100 Atl. 37; *Goodwin* v. *Barre Savings Bank & Trust Co.,* 91 Vt. 228, 234, 100 Atl. 34; *Usher* v. *Severance,* 86 Vt. 523, 528, 86 Atl. 741; *In re Bean's Will,* 85 Vt. 452, 459-467, 82 Atl. 734.

*Judgment reversed, and cause remanded.*