WARREN S. DAME & others *vs.* DANIEL E. KEMPSTER & others.

Suffolk.    March 7, 1888. — March 12, 1888.

Present :  MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Partnership — Agreement — Net Profits.*

An agreement between three persons to carry on a manufacturing business under a firm name, recited that two of them were to assign to the third an interest in a patent; that the third was to buy materials and sell the product, control the finances, and furnish the capital; that if he failed to furnish the capital, the others might assume the management and control of the business; that each was to receive compensation for his services; that the "net profits" after "deducting expenses," including such compensation, should be divided equally between them ; and that neither should sell or assign his interest in the business without the written consent of the others.  *Held,* that the three persons were partners.

CONTRACT against Daniel E. Kempster, William L. Faxon, and Stiles Frost, as copartners, doing business under the firm name of the Kempster Roller Skate Company, to recover for certain boxwood rolls sold and delivered to them.

At the trial in the Superior Court, before *Pitman,* J., the plaintiffs introduced evidence tending to show that, although all bills and statements for the rolls had been rendered by them in the name of the defendant Faxon as purchaser, they in fact

sold the rolls to the Kempster Roller Skate Company; and the question upon whose credit the goods were furnished was submitted to the jury under instructions not objected to.

On the issue whether the defendants were copartners, the plaintiffs offered in evidence the following agreement, signed by the defendants:

"Memorandum of agreement made this sixteenth day of March, 1885, by and between Daniel E. Kempster and Stiles Frost, both of Boston, Mass., and William L. Faxon, of Quincy, Mass. Whereas, said Kempster has invented an improvement in roller skates, for which an application for letters patent of the United States is now pending. And whereas, said Kempster has heretofore sold and assigned one half of his interest in said invention, and any letters patent which may be granted therefor, to said Frost. And whereas, said Faxon is desirous of obtaining an interest in said invention and letters patent, and of joining with said Kempster and Frost in the business of manufacturing and selling said skates, — now, therefore, in consideration of the mutual covenants and agreements of the said parties herein contained, the said parties mutually covenant and agree with each other as follows, viz. :

"*First.* The said Kempster and Frost agree to assign to said Faxon an undivided one-third interest in said invention and letters patent, for which said Faxon agrees to pay the sum of two thousand dollars, of which five hundred dollars is to be paid in cash on or before March 25, 1885, and the remaining fifteen hundred dollars on the issuing of letters patent for said invention, and the delivery to him of a written assignment of said one-third interest therein.

"*Second.* It is agreed, as a further consideration for the assignment aforesaid, that whatever capital may be necessary to carry on the business of manufacturing and selling roller skates, under said letters patent as hereinafter provided, shall be furnished by said Faxon, and that he shall be allowed interest thereon at the rate of six per cent per annum. Should either of the other parties at any time advance any portion of the capital employed in said business, he shall be allowed interest thereon at the same rate. It is understood and agreed that all capital furnished as aforesaid shall be at the risk of the business, and

that none of the parties hereto shall be personally liable to make good any deficiency therein, nor shall their interest in said letters patent and invention be liable therefor.

" *Third.* The business of manufacturing and selling roller skates under said letters patent shall be carried on by said parties under the name of the Kempster Roller Skate Company of Boston.

" *Fourth.* It is agreed that said Faxon shall have general charge of the financial department of said business, including the purchase of materials and sales of skates, and that for such services he shall receive a salary of two thousand dollars per annum. It is, however, expressly understood and agreed that he shall give no notes, nor borrow money on account of said business, in the names of the other parties hereto, or on their credit.

" *Fifth.* It is agreed that said Kempster shall have the entire superintendence and management of the manufacturing department of said business, including the employment and direction of help, and that he shall receive for such services the sum of fifteen hundred and sixty-five dollars per annum, payable weekly.

" *Sixth.* It is agreed that said Frost shall receive for such special services as he may render a fair compensation, to be determined by mutual agreement.

" *Seventh.* It is agreed that the net profits resulting from the manufacture and sale of said skates, after deducting expenses, including the special compensation of the parties as above provided, shall be divided equally among the parties hereto.

" *Eighth.* It is agreed that accurate accounts of the said business shall be kept, which shall always be open to the inspection of all parties hereto, and that once in every six months, commencing November 1, 1885, a statement of such accounts and of the profits made during the preceding six months shall be furnished to each party, and the share of profit due to each party paid to him within thirty days thereafter.

" *Ninth.* It is agreed that neither of the parties shall sell or assign his interest in said letters patent and invention, or in the business of manufacturing and selling said skates, or license any other party to manufacture skates under said letters patent, without the written consent of the other parties hereto.

" *Tenth.* It is agreed that, in case the said Faxon shall fail to furnish the capital necessary for the successful development of said business, the other parties hereto may assume the management and control of the said business in his place, in which case they shall be subject to the same obligations and entitled to the same privileges as are herein specified with reference to said Faxon."

The judge ruled that, under this agreement, the defendants Kempster and Frost were liable for the contracts of Faxon within the scope of the business for which they were associated.

It further appeared in evidence, that the defendants did business under and according to the above agreement, and the defendant Kempster requested the judge to rule that, as he was employed at a stated and agreed price for his services in conducting the business, payable at given periods, and was not liable for any losses of the business, he was not, either as to his employers or third persons, a partner, and that the plaintiffs could not recover against him in this action, although he was entitled to a specific portion of the profits. The judge declined so to rule, and the jury returned a verdict for the plaintiffs. The defendants Kempster and Frost alleged exceptions.

*A. K. P. Joy & F. Joy,* for Kempster and Frost.

*M. Holbrook,* for the plaintiffs, was not called upon.

MORTON, C. J. The Superior Court correctly held that the agreement between the defendants made them partners. By it they were to carry on the business of manufacturing and selling roller skates, under the name of the Kempster Roller Skate Company. Faxon was to furnish the capital, and to have the general charge of the financial department of the business, and of buying materials and selling skates ; each party was to receive a certain compensation ; and then it is provided that " the net profits resulting from the manufacture and sale of said skates, after deducting expenses, including the special compensation of the parties as above provided, shall be divided equally among the parties hereto." It is further provided, that, if Faxon should fail to furnish the necessary capital, the other parties may assume the management and control of the business in his place. It is impossible to construe this agreement so as to hold that

Faxon was the only principal in the business, and that the other defendants were his agents.

On the contrary, it is clear that the materials purchased and the skates manufactured were the property of the three defendants, and that they shared in the profits of the business, and to some extent at least in the losses. Each defendant is entitled to a share of the profits as profits, and he has a lien upon them and upon the stock as against the private creditors of either of the other defendants. In other words, there is in the three defendants a community of interest in the property or stock engaged in the business, and a community of interest in the profits. This, according to all the authorities, made them partners.

*Exceptions overruled.*