# H. A. Gibson v. M. E. Smith & Co.

[Filed February 10, 1891.]

1. **Clerk of District Court:** Superfluous Certificates. There were five certificates of the clerk of the district court, four of them being dated August 5, 1889, and attached to separate stipulations in the district court; and one certificate dated August 24, 1889, to the record proper. *Held,* That the four certificates dated August 5, 1889, were entirely unnecessary and tended to cumber the record.

2. **Partnership:** Profit Sharing. The mere sharing of profits where third persons have not been led to believe there was a partnership does not create a partnership unless there was one in fact.

3. ———: ———. But participation in the profits of a business where there is testimony tending to show that the persons sharing the same took them as principals in a joint business in which each had an express or implied authority to bind the other will warrant a court or jury in finding that there was a partnership.

Error to the district court for Douglas county. Tried below before Groff, J.

*E. J. Hainer,* for plaintiff in error: Community of both profits and losses is essential to partnership. (3 Kent Com., 23; *Post v. Kimberly,* 9 Johns. [N. Y.], 495; *Banchor v. Cilly,* 38 Me., 555; *Buckner v. Lee,* 8 Ga., 288; *Tibbatts v. Tibbatts,* 6 McLean [U. S. C. C.], 82.) Mere profit sharing is no longer a test. (*Cox v. Hickman,* 8 H. L. Cas. [Eng.], 268; 1 Lindley, Partnership, 42; Collyer, Partnership, 7, note 9; Parsons, Partnership [2d Ed.], 73; Story, Partnership [6th Ed.], 49 and note; *Burckle v. Eckert,* 1 Denio [N. Y.], 337; *Denny v. Cabbatt,* 6 Met. [Mass.], 82; *Harvey v. Childs,* 28 O. St., 321; *Eastman v. Clark,* 53 N. H., 276; *Beecher v. Bush,* 45 Mich., 193; *Reed v. Murphy,* 2 G. Green [Ia.], 574; *Vanderburgh v. Hull,* 20 Wend. [N. Y.], 70; *Williams v. Soutler,* 7 Ia.,

435; *Runnels v. Moffett,* 41 N. W. Rep., 224; *Holbrook v. O'Berne,* 9 N. W. Rep. [Ia.], 291.)  An apparent partnership does not fix liability where no one is misled. (1 Lindley, Partnership [4th Ed.], 48, 50; *Sherrod v. Langdon,* 21 Ia., 518; *Cook v. Penrhyn,* 36 O. St., 135; *Parchen v. Anderson,* 5 Pac. Rep., 588; *Wood v. Pennell,* 51 Me., 52; *Thompson v. Bank,* 111 U. S., 520; *Fitch v. Harrington,* 13 Gray [Mass.], 468; *Marble v. Lypes,* 2 So. Rep., 701; 1 Lindley, Partnership, 56, and note 25; *Seabury v. Bolles,* 16 Atl. Rep. [N. Y.], 54; 1 Thompson, Trials, sec. 1499.)

*Chas B. Keller,* and *Capps & McCreary, contra,* cited, contending that a partnership existed between Glover and Gibson: *Strader v. White,* 2 Neb., 362; *Manhattan Mfg. Co. v. Sears,* 45 N. Y., 797; *Bromley v. Elliott,* 38 N. H., 287; *Bond v. Pittard,* 3 M. & W. [Eng.], 357; *Bigelow v. Elliot,* 1 Cliff. [U. S.], 28; *Wright v. Davidson,* 13 Minn., 449; *Miller v. Price,* 20 Wis., 117; *Felichy v. Hamilton,* 1 Wash. C. C. [U. S.], 492; *Dob v. Halsy,* 16 Johns. [N. Y.], 34; *Brown v. Cook,* 3 N. H., 64; *Goddard v. Pratt,* 16 Pick. [Mass.], 412; *Baring v. Crafts,* 9 Met. [Mass.], 380; *Champion v. Bostwick,* 18 Wend. [N. Y.], 175; *Catskill Bank v. Gray,* 14 Barb. [N. Y.], 471; *Berthold v. Goldsmith,* 24 How. [U. S.], 536–546; *Fitch v. Harrington,* 13 Gray, 468–474; *Purviance v. McClintee,* 6 S. & R. [Pa.], 261; *Cushman v. Bailey,* 1 Hill [N. Y.], 526; *Wood v. Vallette,* 7 O. St., 172; *Smith v. Hollister,* 32 Vt., 695; *Ward v. Thompson,* 22 How. [U. S.], 333; *Hazard v. Hazard,* 1 Story [U. S.], 371–374; Story, Partnership, 54, 56, 90, 96, 97; *McCann v. McDonald,* 7 Neb., 309.

MAXWELL, J.

Before proceeding to the consideration of this case we desire to call attention to certain certificates of the clerk of

the district court. We find five such certificates, the last being dated August 24, 1889, which is the only certificate required in the case. In addition to the foregoing, however, we find a certificate dated August 5, 1889, to a stipulation of the attorneys, also a like certificate of that date to another stipulation, and a like certificate of that date to a third stipulation, and a like certificate of that date to a fourth stipulation of the attorneys. Here are four certificates that are not authorized by law, and were wholly unnecessary, and if charges have been made therefor, the party is clearly liable for the penalty imposed by statute. It is the policy of the law to confine the fees charged by an officer strictly within the limits of the statute, and an officer cannot, by adding unnecessary certificates, increase the fees to be collected by him without subjecting himself to the penalties of the law.

The charging of fees is a power liable to abuse, and it is the duty of the courts to enforce the penalties of the law and prevent an abuse of such power. It may be said, however, that there being four judges in Douglas county holding separate courts it is necessary to certify papers in each court where the clerk cannot be personally present. This, however, is not the case as the filing on the paper duly signed by the clerk or his authorized deputy is all that is required.

Second—This is an action by Monroe E. Smith and others against Homer A. Gibson and William Glover, as copartners, doing business under the name of A. H. Gibson.

To the petition filed in the case Mr. Glover filed an answer in which he denies that he was a copartner with Gibson, but alleges that he had an interest in a certain stock of merchandise that was kept by A. H. Gibson in a store at Hyde, Colorado, and being the same store mentioned by plaintiff in his petition; that the interest, terms, and conditions upon which said A. H. Gibson held said

merchandise was under and by virtue of a certain written contract, a copy of which is in the words and figures following to-wit:

"'Article of agreement, made and entered into on this 24th day of November, 1886, by and between William Glover of the city of Aurora, Nebraska, party of the first part, and A. H. Gibson, of Hyde, Colorado, party of the second part,

"'Witnesseth, that the party of the first part has furnished unto the party of the second part a stock of general merchandise valued at $1,248.90, the same being part of the stock of general merchandise now in possession of the party of the second part, and it is agreed by the parties hereto that the said party of the second part is to furnish stock consisting of general merchandise so as to make the entire amount of stock of the value of $3,746.70. And the party of the second part, for and in consideration of the receiving of said stock of general merchandise, agrees to and with the party of the first part to carry on the business of selling general merchandise at retail at Hyde, Weld county, Colorado, and agrees to give said business his personal labor and attention, and keep a true and accurate account of said business, and to keep said stock good and of the value of $3,746.70 out of the proceeds of said business; and it is agreed by and between the parties hereto that during the month of January of each year a true and correct invoice shall be taken of the stock in said store, and a full and true statement of said business shall be made by the party of the second part; that the party of the first part shall then receive the one-third of the net profits arising from said business. But it is expressly agreed that said business shall be conducted in the name of the party of the second part, and that this agreement shall not be construed so as to make the parties hereto partners, and that the party of the first part shall not be liable for any loss occurring by reason of said business, and that at all

times the said party of the first part shall be the owner of said stock of general merchandise up to the value of one thousand two hundred and forty-eight and $\frac{90}{100}$ dollars.

"It is further agreed by and between the parties hereto that if the party of the second part shall neglect or refuse to faithfully carry on said business as herein provided, then the party of the first part shall have the right to take immediate possession of said stock of goods and declare this contract at an end and settle up said business as herein provided.

"It is also agreed that the party of the second part shall carry on said business for the term of —— years from this date, and at the expiration of said time a true and accurate invoice of the stock of goods then on hand shall be taken and an accurate account of said business be given by the party of the second part to the party of the first part, and the party of the second part shall turn over to the party of the first part one-third of stock on hand at time of invoice, $1,248.90 worth of said stock to be in as good condition as the stock he received from the party of the first part, and any and all profits that may be due the party of the first part on account of said business.

"'We herewith sign our names
'In presence of'

"WM. GLOVER.
"'Witness:                           "A. H. GIBSON.
"'W. E. BUELL.
"'J. T. HARDIN.

"That on or about the 1st day of May, 1886, the said William Glover and the said A. H. Gibson had a full, fair and complete settlement of the business had under and by virtue of said contract, the same having been settled in accordance with the terms and provisions of said written contract above set forth."

In the reply the plaintiffs allege that they had no knowledge of the terms of the contract between Glover and

Gibson and allege in substance that Glover is liable as partner.

There seems to have been a trial to a jury and a disagreement, and afterwards the cause was submitted to the court on the evidence formerly taken and judgment was rendered in favor of the plaintiff, from which an appeal is taken to this court.

The testimony tends to show that in the summer of 1886 Glover and Gibson were residents of Hamilton county in this state; that they mutually agreed to purchase a stock of goods in Hastings, in payment of which Glover turned in a house and certain lots in the city of Aurora, and Gibson eighty acres of land near that place, it being understood that Glover was to have a one-third interest in the stock and Gibson a two-thirds interest. This business was carried on for a short time at Hastings by one Wilcox, who seems to have been employed by both Glover and Gibson. In September, 1886, the stock was moved to Hyde, Colorado, and conducted in the name of A. H. Gibson. A cousin of Glover, named Marcy, seems to have been sent there as a clerk and on his returning to Aurora on a visit Glover professes to have sold to him his interest in the stock and so notified Gibson. Gibson, however, refused to enter into copartnership with Marcy, hence this arrangement fell through. About this time Glover ordered a large bill of goods from Tootle Hosea Company, of St. Joseph, and notified Gibson to that effect. Glover claims that he did this for the new firm of Gibson & Marcy. As Gibson refused to accept Marcy for a partner Glover endeavored to sell his interest in the business to Gibson and sent him a note filled out for the amount which he claimed was due him. This purported note is dated October 12, 1886, for the sum of $1,050, with interest at ten per cent and due one year after date. Gibson refused to sign the note and afterwards on the 24th day of November, 1886, the contract set out in the answer was

entered into. After the execution of the contract referred to the business was continued as formerly until May, 1887, when Glover purchased the interest of Gibson in the store for the sum of $1,000, which seems to have been applied on the debts.

The plaintiff's claims are for goods sold to Gibson during the continuance of the alleged partnership. The question presented is, Does the proof show that Gibson and Glover were in fact partners?

The general rule no doubt is at the present time that merely sharing in profits where third persons have not been legitimately led to believe there was a partnership, does not create one as to them unless there was one in fact. (*Colwell v. Britten*, 26 N. W. Rep., 538 ; *Runnels v. Moffat*, 41 Id., 224.)

In the case last cited it was held by the supreme court of Michigan that the fact that two persons own and run boats together, paying expenses out of the earnings and dividing the profits proportionately, does not create a partnership as between themselves where there is no partnership name and there is no understanding between the parties that such relation exists. The same doctrine is announced in *Harvey v. Childs*, 28 O. St., 319, and in *Holbrook v. O'Berne*, 9 N. W. Rep., 291.

Participation in the profits of a business does not *per se* make a person a partner ; to have that effect the participation must be in the profits as such under circumstances which give him a proprietary right as principal trader in such profits before division. (*Burnett v. Snyder*, 81 N. Y., 550 ; S. C., 37 Am. Rep., 527 ; *Oppenheimer v. Clemmons*, 18 Fed. Rep., 886 ; *Wild v. Davenport*, 48 N. J. L., 129 ; *Vinson v. Beveridge*, 3 McArthur, 597 ; 36 Am. Rep., 113 ; *Citizens Bank v. Hine*, 49 Conn., 236 ; Lindley on Partnership, 177.) This, in fact, was the decision in *Strader v. White*, 2 Neb., 348. In that case there was testimony tending to show that F. A. White had been in-

terested in a grading contract, although his name had been withheld from the articles of agreement, and it was held in effect that if he was found to be a partner he would be chargeable as such with the debts of the firm. The instructions given conform to the proof in that case, and, we think, state the law correctly.

The case was tried in the district court before Judge Lake, and the opinion of a majority of the court was delivered by him, and some features of the case at bar resemble the leading points in that case. In the Strader case there was testimony tending to show that White participated in the profits, and in the case at bar, after the firm had been doing business for nearly four months, there was an attempt on the part of Mr. Glover, by the articles of agreement, to restrict his liability to the creditors of the firm. He still held the share of his stock, however. This stock was constantly being sold and replenished by his associate, Mr. Gibson, who, from all the testimony, had authority thus to sell the stock and purchase new goods to keep a sufficient assortment on hand. This being the case, and the testimony of Mr. Gibson being that the parties were partners, we are unable to reach a different conclusion from that of the district court.

The correct rule, no doubt, is, that participation in the profits of business, although cogent evidence of a partnership, is not necessarily decisive of the question. The evidence must show that the persons taking the profits share them as principals in a joint business in which each had an express or implied authority to bind the other. (*Harvey v. Childs*, 28 O. St., 319.)

Where money is advanced to be used in a trading business and returned with a share of the profits during the time the business is continued, it may well be implied that the business was conducted on behalf and by the authority of the person advancing the money and sharing the profits, for it is by continuing the trade in the ordinary way

that he expects to realize profits. Such a case is clearly distinguishable from one where money is advanced to be embarked in a single transaction where no credit is contemplated; in such case there is no ground for the implied authority to incur debts as where the business is that of merchandising. (*Harvey v. Childs*, 28 O. St., 323; *Wood v. Vallette*, 7 Id., 172; *Leggett v. Hyde*, 58 N. Y., 272.)

Upon the whole case it is apparent that there is no error in the record and the judgment is

AFFIRMED.

THE other judges concur.