ADELAIDE W. SHELDON *v.* C. RUSSELL LITTLE.

May Term, 1940.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 1, 1940.

302

*Philip M. M. Phelps* for the defendant.

*Stafford, Abatiell & Stafford* and *Fenton, Wing & Morse* for the plaintiff.

BUTTLES, J. The plaintiff here seeks to recover in general assumpsit for balances alleged to have been agreed between the parties on accountings between them for the years 1926, 1927, 1929, 1930 and 1931 respectively, to be due from the defendant to the plaintiff. A claim originally made for a portion of the year 1932 was later eliminated by agreement. Trial was by court, findings of fact were filed and judgment rendered for the plaintiff. Exceptions were allowed the defendant, but the only such exception which the defendant has briefed in this Court is to the overruling of his motion, seasonably made, to dismiss the action. This motion was predicated on the grounds that the parties were partners during all of the time covered by the plaintiff's claim; that there had never been an accounting between the parties of the partnership business, or a full statement of that business; that such accounting should be had, and that the

plaintiff's cause of action is one of accounting and not in assumpsit. Defendant concedes that if the relationship between the parties was not that of partners there was no error in the overruling of his motion.

From the facts found it appears that prior to March, 1925, the plaintiff and defendant each conducted an insurance business in Fair Haven, Vermont, that of the defendant being such that he gave only a part of his time thereto. On March 5, 1925 the parties executed a written agreement providing for the consolidation of their two insurance agencies. Thereafter the consolidated business was conducted in accordance with such agreement until October 1, 1932, when the parties ceased to do business together under such agreement or in any other way. During all of the time that the business was so conducted it was actively managed by the defendant who took general charge of the same, kept the books and handled the finances. Meanwhile the plaintiff was away from Fair Haven much of the time and took no active part in the business except that during the year 1932 she gave it some attention and participated in its management. At the end of each year except 1932 the defendant submitted to the plaintiff a written report or statement purporting to give certain data regarding the business for that year. Each of these reports states the amount of money or value that each of the parties had received from the business during the year and the difference between those amounts. All of these reports are exhibits in the case and are referred to and made a part of the findings. Each of them contains a tabulation of expenses and a tabulation by months of what appears to be, in each instance, the commission income of the business. None of the reports are balanced and on each report the difference between the sums of the two tabulations referred to exceeds by a substantial amount the sum of the amounts received by the plaintiff and the defendant.

Said written agreement provided that the said agencies, after being consolidated, should be run as the property of the plaintiff and under the name as theretofore of the Sheldon Agency; that the defendant should have the supervision and management of said agency, bringing to the Sheldon office the books, files, papers and other personal property previously used by him in his own

agency and continue there the general business of the consolidated agencies, devoting his entire working time to the management and development thereof; that the plaintiff might give such time to the management of the business as she cared to give from time to time, but should be under no obligation at any time to give the same her personal attention and care; that from the gross income of the business there should be paid the running expenses including rent, heat, light, office supplies, stenographer and other incidental expenses usual in the conduct of such a business, and that the net profits after the payment of such expenses should be equally divided between the parties to the agreement. Other provisions of the agreement will be considered later.

The question for determination is whether the plaintiff and defendant were partners or sustained some other relation to each other. Where the rights of the parties *inter se* merely are concerned, and no question as to third parties is involved, the criterion to determine whether the contract is one of partnership or not must be: what did the parties intend by the contract which they made as between themselves? *Duryea* v. *Whitcomb*, 31 Vt. 395, 397; 47 C. J. 654; *London Assur. Corp.* v. *Drennen*, 116 U. S. 461, 6 Sup. Ct. 442, 444, 29 L. Ed. 688. This intention may be shown by their express agreement or inferred from their conduct and dealings with one another. 47 C. J. 656. But we have here no indication of the intention of the parties other than their written agreement, so that their intention is to be ascertained by a construction of that writing. Gilmore on Partnership, 7, Sec. 3.

Many definitions of partnership have been given, no one of which would, perhaps, fit all cases, and various tests for determining the existence of the partnership relation have been applied by the courts. The test most generally applied, subject to various conditions and limitations, is that of profit sharing. This Court has recently said that the indispensable constituent of a partnership is that the parties shall be jointly interested in the profits and affected by the losses of the business. *Johnson* v. *Marsh and Ufford, ante,* 266, 15 Atl. 2d, 577, *Farmers' Exchange* v. *Brown,* 106 Vt. 65, 68, 169 Atl. 906; *Brigham* v. *Dana,* 29 Vt. 1, 10; *Chapman* v. *Devereux,* 32 Vt. 616, 619; *Griffith* v.

*Buffum and Ainsworth,* 22 Vt. 181, 184, 54 Am. Dec. 64. Such joint interest may result even though one party furnishes the capital or stock and the other contributes his labor and skill. *Brigham* v. *Dana, supra.* But there is a clear distinction between agreements whereby the parties have a specific interest in the profits themselves as profits, and agreements which give to the person sought to be charged not a specific interest in the business or profits but a stipulated proportion of the proceeds as compensation for his labor and services. The former constitute a partnership, but the latter do not. *Johnson* v. *Marsh and Ufford, supra; Farmers' Exchange* v. *Brown, supra; Clark* v. *Smith,* 52 Vt. 529, 532; *Tobias* v. *Blin,* 21 Vt. 544, 548.

This distinction between profits received as profits and profits received in payment of an obligation is generally recognized. In *Eastman* v. *Clark,* 53 N. H. 276, 16 Am. Rep. 192, a case in which the authorities prior to that time are exhaustively examined, it is said by Judge Doe at page 297: ''The distinction between taking profit as profit and taking it not as profit but as payment of a debt is a familiar one, firmly established by the authorities but not always explained as clearly as it might be. It is the distinction between a partner and a creditor obscurely expressed. Taking a share of the profit as profit (by A) is taking it as his profit as the profit of his (flour) business—as the profit of a principal—taking it in the capacity of a principal trader—an owner of the profit—a partner: taking a part of the profit as payment of a debt is taking it in the capacity of a hired man or other creditor. * * * If A is a clerk and creditor what is called his share of the profit belongs, as a matter of absolute legal title, exclusively to B until he pays it to A, and then belongs exclusively to A: it does not, at any time, belong to A and B in common, or in any manner indicated by the ordinary signification of the term 'share of a partner.' ''

In *Gibson* v. *Smith,* 31 Neb. 354, 47 N. W. 1052, it is concisely stated that to have the effect of making a participant in the profits of a business a partner his participation must be in the profits as such under circumstances which give him a proprietary interest in them as principal before they are divided. To the same effect are *Tyler* v. *Waddingham,* 58 Conn. 375, 20 Atl. 335, 338, 8 L. R. A. 657; *Burnett* v. *Snyder,* 81 N. Y. 550, 37 Am. Rep. 527; *Chapline* v. *Conant,* 3 W. Va. 507, 100 Am.

Dec. 766; *Baum* v. *Stephenson,* 133 Mo. App. 187, 113 S. W. 225; *Jackson* v. *Haynie's Adm'r,* 106 Va. 365, 56 S. E. 148; *Kelly* v. *Gaines,* 24 Mo. App. 506; *Estabrook* v. *Woods,* 192 Mass. 499, 78 N. E. 538.

But such proprietary interest, as principal, in the profits before they are divided involves ownership of an interest in the business that produces the profits. *Estabrook* v. *Woods, supra; Dame* v. *Kempster,* 146 Mass. 454, 15 N. E. 927; *Rosenblum* v. *Springfield Produce Brokerage Co.,* 243 Mass. 111, 137 N. E. 357, 360; *Southern Can Co.* v. *Hartlove,* 152 Md. 303, 136 Atl. 624, 630.

In the case we are considering by the terms of the agreement the business was to be run as the property of the plaintiff; no substantial increase in expenses of management could be incurred by the defendant as manager except with the approval of the plaintiff; the plaintiff could terminate the agreement at any time, resume control of the business and discharge the defendant as manager by paying him a sum equal to one half of the earnings for another year; the plaintiff could sell the business at any time, but before selling to another she was required to offer it to the defendant at a price to be based on the business done by the agency during the year 1924; in case of plaintiff's death the defendant was to have a similar option to purchase the business from plaintiff's personal representatives. Clearly it was the intent of the parties that the plaintiff should have the sole proprietary interest in the business and in the profits resulting therefrom before they were divided. The defendant received a portion of the profits not as profits, but as compensation for his services as manager of the plaintiff's business. We hold that the parties were not partners and there was no error in the denial of the defendant's motion as made.

The defendant seasonably excepted to the judgment as rendered but he has not briefed the exception. As we have often said, this Court does not search for grounds upon which to reverse a judgment. *Dent, Admr.* v. *Bellows Falls and S. R. St. Ry. Co.,* 95 Vt. 523, 534, 116 Atl. 83; *Hopkins, Trustee* v. *Sargent's Estate,* 88 Vt. 217, 222, 92 Atl. 14; *Gordon* v. *Deavitt,* 85 Vt. 338, 340, 81 Atl. 1128; *Dependents of Vlahos* v. *Rutland Restaurant,* 104 Vt. 188, 190, 157 Atl. 832. But when the question presented is fundamental to the excepting party's rights

we may relax the rigor of the rule and consider it. *Dependents of Vlahos* v. *Rutland Restaurant, supra.*

In the case before us it is apparent from the findings that they do not support the judgment. The fifth finding is to the effect that the statement for the year 1926 shows that in that year the defendant received from the business $49.76 more than the amount received therefrom by the plaintiff, and that this is the amount which plaintiff claims to recover as a balance agreed upon between the parties as due the plaintiff for that year. Findings numbered 6, 8, 9 and 10 are similar findings with respect to the statements for the years 1927, 1929, 1930 and 1931 respectively. Finding number 11 is to the effect that the total amount which the plaintiff seeks to recover as balances agreed upon between the parties for the years referred to is $2,343.27 and that the defendant during those years did receive that total amount out of the business in excess of the total amount so received by the plaintiff. Judgment was rendered for that amount, although it is apparent that the findings would support a judgment for no more than half of that sum, since payment by the defendant to the plaintiff of such one half would equalize the amounts withdrawn by the parties from the business.

But we cannot say that justice would be done by such equalization of the amounts withdrawn by the parties since, as already noted, the record before us does not indicate that all of the profits of the business were absorbed by such withdrawals. Moreover the court finds that premiums amounting to about $10,000 which were unpaid on October 1, 1932 have since been collected by the plaintiff, and we are not satisfied that all of the commissions earned on this business have been properly allocated.

To the end that no injustice may be done we will remand the case. *Hammonds, Inc.* v. *Flanders,* 109 Vt. 78, 83, 191 Atl. 925; *O'Boyle* v. *Parker-Young Co.,* 95 Vt. 58, 63, 112 Atl. 385; *Rice* v. *Bennington County Sav. Bank,* 93 Vt. 493, 512, 108 Atl. 708. The question is not before us and we express no opinion as to whether the reports or statements submitted by the defendant to the plaintiff are such statements of account as would sustain the account stated count in general assumpsit against proper objection.

*Judgment reversed and cause remanded.*