FRANK D. CHITTENDEN *v.* HAMILTON REALTY CO.

May Term, 1944.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 3, 1944.

*Alban J. Parker* for the plaintiff.

*A. F. Schwenk* for the trustee, Vermont Savings Bank.

JEFFORDS, J. This is an action of contract, the principal defendant was defaulted and judgment entered against it. A commissioner was appointed under P. L. 1780 to hear testimony and make his report on the disclosures filed by the various trustees. The commissioner held a hearing and filed his report on which the county court entered judgment discharging the several trustees. The only matter presented to this Court for determination relates to the disclosure of the Vermont Savings Bank, hereinafter called the Bank. For the purposes of this opinion the only exception that need be noticed is that to the judgment.

The findings of the commissioner show that four different groups of persons, who were the trustees, other than the Bank, summoned in this suit desired to have houses built for them by the Hamilton Realty Co. These persons made applications to the Vermont Savings Bank for loans to finance the construction of the houses. The applications were submitted to the Federal Housing Administration for approval. Upon approval the borrowers gave their notes to the Bank secured by mortgages upon the building lots for the sums loaned by the Bank. All of the houses were to be built by Hamilton Co. according to regulations of the F. H. A. governing stage payments. The borrowers then gave written authorization to the Bank for the payment of the proceeds of the loans to Hamilton Co. In these authorizations the borrowers agreed to hold the Bank harmless from all liability resulting from compliance with the same. Various amounts were paid under these authorizations prior to May 8, 1941.

The writ in this case was served on the Bank as trustee on the above date and again on May 20. The Bank filed disclosures on May 10 and May 22 denying in each instance that it was liable to the defendant at the time of the service of the writ upon it.

On May 9, 1941, Hamilton Co. made an assignment to one Proctor for a stated consideration of all proceeds from any stage payments on houses it was then building or would build in the future. This assignment was received by the Bank on May 10 and approved by it on May 24.

Three findings of the commissioner in whole, or in their material parts, are as follows:

"16. On the 8th day of May a representative of the bank started an examination, of accounts and reported that there was nothing due the Hamilton Realty Company on any of these construction jobs, but the payments that were made after May 8th, were all included in the aggregate amounts paid out of the mortgage loans."

"17. It appeared that all of these subsequent payments were for work or materials which had been furnished or performed prior to May 8th, but which had not been approved or accepted by the Vermont Savings Bank as proper payments. It appeared that payments for these separate construction jobs were to be made in accordance with the schedule of payments prepared by the F. H. A. and a copy of such a schedule was introduced in evidence against the objection and exception of the plaintiff, and is marked Trustees' Exhibit No. 2. From that schedule the Commissioner understands and finds that compliance inspections should have been obtained from the F. H. A. according to its schedule. There was no evidence that this was done, or that any inspection was made until the day the Trustee Process was first served. The Commissioner submits the question of the bank's right to make these payments after May 8th under all the facts found."

"18. There was no evidence showing that the principal defendant had proceeded with any of these contracts after the date of the first service, so as to be entitled to any further payment, up to the time the last service was made upon the trustee. Certain payments, however, were made by the bank after the service of the writ on May 8th, and also after service of the writ on May 20th, from which it might be inferred that the bank was owing the principal defendant money due it on the 8th day of May and also that it was owing money at the date of the second service on May 20th. Whether such an inference is warranted by the facts stated is submitted to the Court."

The commissioner following the above quoted findings lists the amounts paid by the Bank after May 8. These sums total over $3,000.00 and it is shown that the first of these payments was made on the date of the second service of the writ on the Bank, or a short time thereafter. It also appears that several other payments were made a few days after May 20.

Findings 25 and 26 are as follows:

"25. The Commissioner finds that all payments made prior to

May 8th were 'goods, effects or credits' in the hands of the bank belonging to the debtor. If the Court finds that moneys paid after the date of service of the process on May 8th upon the bank for earnings prior to the date of the Trustee Process were properly paid, then the Commissioner finds that there was nothing due from the bank to the defendant at the time of the service of the process on May 8th or on May 20th, and that whatever funds were left in the hands of the bank remained the property of the several borrowers."

"26. If the Court holds that payments made after May 8th were not properly made and were not chargeable to the funds which were in the hands of the bank on the date of the service of process upon it, then the Commissioner finds that such payments, amounting to Three Thousand Four Hundred ninety-eight Dollars and Ninety-seven cents, ($3,498.97) were 'goods, effects and credits' in the hands of the trustee at the time of the service of the writ upon it, and that it is chargeable for that amount, or so much thereof as may be required to satisfy any judgment against the principal defendant in this case."

The vital question in this case is whether on either of the dates of the services of the writ on the Bank as trustee there was any money unconditionally due from it to Hamilton Co., the principal defendant, from the proceeds of the loans made to the borrowers. It was the duty of the commissioner to find the facts bearing on this question, to draw proper inferences therefrom, and to set forth such facts and inferences in his report with his decision thereon. The report should have been so worded as to clearly indicate to the county court the proper judgment to be entered on the report.

From the findings it is apparent the commissioner felt that the facts and circumstances relating to the payments by the Bank after May 8th had a decisive bearing in the determination of the ultimate question. The commissioner states in finding 18 that from these payments and certain facts taken in connection therewith, "it might be inferred the bank was owing the principal defendant money due it on the 8th day of May and also that it was owing money at the date of the second service on May 20th." The question of whether such an inference was warranted by the facts stated was submitted to the county court.

In findings 25 and 26 the commissioner leaves it to the court to

find whether the payments made after May 8 were "properly paid" or "properly made". He says if the court finds they were so paid then he finds there was nothing due from the Bank to the defendant at the times of the services of the writ. The commissioner states that if the court finds such payments were not properly made then he finds the Bank held funds in a certain amount upon which it is chargeable as trustee. It is not entirely clear what the commissioner means by the above quoted words. It seems reasonable to conclude he intended to say that the subsequent payments were so paid, or made, if not taken from funds unconditionally due Hamilton Co. on May 8.

In finding 17 the commissioner "submits the question of the bank's right to make these payments after May 8th under all the facts found." Here again it is not clear just what was meant by the use of the word "right". It is reasonable to consider that the commissioner intended to use this word in the same sense as he used "properly paid" and "properly made" in findings 25 and 26, i. e. he submitted to the court the question of whether the payments made subsequent to May 8 came from funds at that time unconditionally held by the Bank.

By P. L. 1780 the commissioner was required to report to the court the facts and his decision thereon as to the trustee's liability. There is no ultimate finding in which the commissioner decides the answer to the vital question heretofore stated. Findings 25 and 26 were apparently intended to be ultimate findings but in them the commissioner has left a factual matter to be found by the court as a condition precedent to a finding by him. In findings 17 and 18 questions are left for the court to determine which the commissioner should have decided. In short, the commissioner in several instances has left for the determination of the county court material facts or inferences to be drawn therefrom which the statute required the commissioner to decide.

There are findings to the effect that the proceeds of the several mortgage notes, as a whole, never became unconditionally due Hamilton Co. from the Bank as the Bank only had the right to pay from such proceeds when stage payments on the various houses became due under the F. H. A. schedule of payments. Apparently the county court construed these findings, together with others of like tenure, as stating there was nothing unconditionally due from the Bank to Hamilton Co. at either time the trustee writ was

served and accordingly entered judgment discharging the trustee under P. L. 1753.

■■ Ordinarily the only question for our determination on the exception to the judgment would be whether the judgment was warranted by the facts found. *Campbell* v. *Ryan,* 112 Vt 238, 240, 22 A2d 502. But the usual case is not here presented. The commissioner indicates in findings 25 and 26 that the matter of the payments subsequent to May 8 is so vital that if the questions concerning it be decided in favor of the plaintiff the Bank should be held chargeable as trustee and possibly for a substantial amount. It is clear from the findings that material facts or inferences relating to this matter have not been determined by the commissioner nor questions pertaining thereto decided by him. Not until this is done will it be possible to determine whether final judgment should be entered discharging the Bank as trustee or whether it should be held liable. Consequently to the end that no injustice may be done we will remand the case for further proceedings. *Sheldon* v. *Little,* 111 Vt 301, 307, 15 A2d 574, 137 ALR 1; *O'Boyle* v. *Parker-Young Co.,* 95 Vt 58, 63, 112 A 385.

In the course of these proceedings further findings should be made bearing on this matter of subsequent payments. Without limiting such findings, the following questions should therein be answered, if possible, so that the facts for the basis of the decision of the commissioner on this matter are apparent:

1. When were stage payments due and payable?

2. Who had authority to determine the amount of a certain stage payment and when it was due and payable, the Federal Housing Administration or the Bank?

3. How much, if anything, remained unpaid to Hamilton Co. on May 8 for work done or material furnished by it on or before that date?

4. What happened after the services of the writ which would alter the situation of the Bank in respect to payment for work or material done or furnished prior to May 8 from the funds of the borrowers?

5. If anything happened to change the situation of the Bank in this respect existing at the time of each service of the writ, what was it and how did it happen?

*Judgment reversed pro forma, and cause remanded for further proceedings.*