# Mary Mislosky v. Hadley H. Wilhelm and Eva Wilhelm

[286 A.2d 267]

No. 4-71

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed December 7, 1971

*Ralph Chapman*, Brattleboro, for Plaintiff.

*James W. Wright*, Woodstock, for Defendant.

**Holden, C.J.** This is an action in equity to obtain an accounting and establish a constructive trust. The subject of the controversy is property acquired by the named defendants as a result of a joint undertaking with the plaintiff. The complaint alleges the transaction between the parties was a "partnership arrangement." The defendants answered with a general denial. They affirmatively pleaded the Statute of Frauds and allege the relationship with the plaintiff was merely that of borrower and lender which resulted in a loan that has been paid to the satisfaction of the parties, as an accord and satisfaction.

The defendant Hadley H. Wilhelm deceased before the cause came on for hearing and the executor under his last will entered and defended the action. The chancellor heard the cause, made findings of fact and thereupon dismissed the complaint. The plaintiff appeals.

The original defendants, Hadley and Eva Wilhelm were married and resided in Plymouth, Vermont, until the husband's

death in January 1970. The plaintiff and Eva Wilhelm are sisters. On August 18, 1961, the defendants took title to two hundred fifty acres of land and buildings in Plymouth, referred to in the evidence as the Grand View Lodge property. The purchase price of $27,500 was financed by a mortgage loan from the Woodstock National Bank in the amount of $13,500. The chancellor found that the balance of the purchase price, in response to the defendants' request for assistance, "was by the contributions of the plaintiff in the amount of Eighty-two hundred ($8,200.00) Dollars; Three thousand ($3,000.00) borrowed from Kulick and sum of Twenty-eight hundred dollars ($2,800.00) contributed by the defendants."

The warranty deed, executed and delivered by the sellers, vested title in the Wilhelms as tenants by the entirety. The plaintiff was present at the closing. The court was unable to find that the plaintiff requested or insisted that she be included on the deed as a grantee. Sometime during the following year the plaintiff requested the defendants to include her daughters as one of the grantees of the subject proper, but this was not accomplished.

Following the purchase of the Plymouth property the defendants entered upon possession and operated a guesthouse and lodge for paying guests. They continued the operation until it was sold on July 9, 1969. The defendants operated the property as sole owners, paying the expenses of the operation and taking such profits as were earned and assumed the losses that were incurred.

During this period the plaintiff was regularly employed in New York City. During vacation periods and on frequent weekends she visited the Wilhelms at the lodge and during such time performed work and services in cleaning, washing and cooking. At no time did she request pay for such services and she received no compensation from the defendants.

In September 1962, the defendants sold ten acres of Plymouth property for $7,000.00. At this time the mortgage to the Woodstock National Bank was discharged.

The plaintiff advanced the further sums of $200.00 on April 22, 1963, and $300.00 on August 23, 1963. On September 9, 1963, the defendants executed and delivered to the plaintiff a written statement:

"This is to certify that MARY MISLOSKY has made the following INVESTMENTS in the Grand View Lodge, Located in the Town of Plymouth, Vermont, Owned by Mr. and Mrs. Hadley H. Wilhelm.

| | | |
|---|---|---|
| 18 August 1961 | $8,000.00 | By check |
| 22 April 1963 | 200.00 | Cash |
| 23 August 1963 | 300.00 | By check |

$8,500.00

In case of death of the owners Hadley H. or Eva Wilhelm, this is to CERTIFY that this amount ($8,500.00) is a legeal (sic) debt to their Estate.

Owner: Hadley H. Wilhelm /s/ Hadley H. Wilhelm
Owner: Eva Wilhelm ————————————."

Again during the years 1965 through 1969 the defendants furnished the plaintiff similar statements for "investment in Grand View Lodge." These statements reflect funds originally advanced by the plaintiff with the accumulated annual interest computed at 6%, to represent what is designated as the "Total Investment."

Sometime in 1968 the defendant received an offer to sell the Plymouth property to a prospective buyer at a price of $180,000. The Wilhelms communicated and discussed this proposition with the plaintiff. The offer was rejected, but while the sale was under consideration the plaintiff was informed that she could expect $50,000 from the proceeds.

The chancellor's findings report that on June 5, 1969, the defendant Eva wrote the plaintiff that she would "have a lot of things to talk over when you come up." Five days later, on June 10, the plaintiff received a collect phone call from her sister Eva, informing her that the lodge had been sold and she, the plaintiff, would be able to retire on the money she had invested.

This was the same day that the defendant Eva and her deceased husband entered into a contract for the sale of land and buildings for $300,000. The sale was consummated on July 7, 1969. The business and a twenty acre lot were excluded from the sale.

Before title passed the plaintiff requested the defendants to furnish her with a copy of the sales agreement. She also

requested the purchaser, one Webb, to provide her with a copy of the sales contract. Both requests went unanswered.

After the sale was completed Hadley Wilhelm submitted three proposals to the plaintiff, including an offer of $25,000 in cash. These proposals were reduced to writing and received in evidence as exhibits. During the hearing the plaintiff was asked, on direct examination, what she said to her brother-in-law about this proposal. She replied: "I says, well, you offered me fifty thousand last year, and this year it's twenty-five thousand, what happened? Well, he started giving me figures. He invested in this and did this and did that. That there's only to be a little bit left, and he couldn't afford any more so with that I took these plans and I went back . . . ." Over the defendants' objection to the last part of the answer, the court allowed full testimony to stand.

An alternative plan was submitted which provided for Mr. Wilhelm to buy other land "for the $25,000 *cash* and have the Deed made out in your (the plaintiff's) name. You then own the land in your name. You can do what you want with the land. This could be done at a great tax saving at the time of the closing of the sale of the lodge or a short time there after."

The third plan provided for payment of $25,000 at the time of the closing of the lodge with additional payments of $1,000 annually, for a total of $35,000. Mr. Wilhelm pointed out that in this arrangement the plaintiff "would have to pay the income tax on the total $35,000 in the next ten years."

These exhibits strongly refute the defendants' claim that their transactions with the plaintiff were merely loans. This is especially true of the writer's reference to tax liability.

While the present action was awaiting trial the plaintiff and the defendants signed and filed a written stipulation. The defendants agreed to pay the plaintiff the "total computed sum of the debt, as alleged by the defendants to August 18, 1969, in the amount of $13,465.72." The agreement acknowledges that the payment is made without prejudice to the claim of the defendants that the amount paid was their full obligation to the plaintiff. Neither was it to prejudice the plaintiff's claim to a partnership interest in the subject property. The stipulation, which is confirmed in the findings, removes the

claims of payment and accord and satisfaction from our consideration on appeal.

Concerning the plaintiff's claim to a partnership interest in the commercial operation, the chancellor found that during the time the property was used for a guest lodge the defendant Eva Wilhelm discussed with the plaintiff the business operations of the lodge and communicated various offers of purchase which they received, looking toward a sale of the property. The findings go on to state that: "(T)he Court, however, cannot find from any creditable evidence that plaintiff ever participated in the management, control or operation of the property as a lodge business, or that she took part in any way in the financial operation of the business." During the eight years the defendants operated the lodge they did not furnish the plaintiff with any financial statement of the operation.

The evidence creates conflicting inferences on this particular aspect of the case. We are not to revise the chancellor's decision on the point unless it is clearly wrong.

While the plaintiff, from time to time, contributed transitory services in the use of the property as a guest lodge, such participation, although coupled with a substantial capital investment, is insufficient to establish a true partnership in the commercial enterprise. An essential element of a business partnership is an agreement among the parties to share in the profits and losses of the venture. *Sheldon* v. *Little,* 111 Vt. 301, 304, 305, 15 A.2d 574 (1940); *Farmers' Exchange* v. *Brown,* 106 Vt. 65, 67, 169 A. 906 (1934). As we have noted above, the chancellor found that the defendants operated the venture as sole owners, taking the profits and assuming the losses. The plaintiff has done neither, as far as the guest lodge operation was concerned. Limiting our holding strictly to the commercial use of the property, the chancellor's dismissal of the plaintiff's claim to a partnership interest in the business operation was well grounded in fact and law.

This determination is not dispositive of the whole case. Although the findings fall short of the essential ingredients of a conventional partnership undertaking, they present the question of a joint venture in a real estate project.

And although such an enterprise differs from a true partnership undertaking, it has many of the legal incidents of a partnership. *Manatee Loan and Mortgage Co.* v. *Manley's Estate,* 106 Vt. 356, 361, 175 A. 14 (1934). See also 46 Am.Jur.2d *Joint Ventures* § 17.

The chancellor reports in his findings that there is substantial merit to the plaintiff's claim that she is entitled to share in the profit derived from the sale of the property for the reason alone that she made its purchase possible by her contribution to the cost. Yet it appears from prior findings that: "(N)o instrument, promise or contract in writing and no memorandum or agreement in writing signed by the defendants or anyone acting in their behalf granting the plaintiff an interest, in and to the property in question was offered or introduced in evidence." Further the "Court is unable to find by the required measure of proof that the defendants, or either of them, ever took or agreed to hold in trust for the plaintiff, title to any portion of the Plymouth property."

These considerations, which apparently persuaded the chancellor to dismiss the action, are not controlling. Joint venturers may join in the purchase of land with an understanding that each is to contribute a proportionate share of the purchase price and thereafter sell the property and share in the profits according to their proportionate interest. *Clark* v. *Sidway,* 142 U.S. 682, 35 L.Ed. 1157, 1160 (1892) ; Restatement of Restitution § 194 (1937). And a single property may be acquired and owned jointly although title is taken in the name of only one of the coadventurers. *Bruce* v. *Hastings,* 41 Vt. 380, 384 (1868) ; 46 Am.Jur.2d *Joint Ventures* §§ 17–18; 48 C.J.S. *Joint Adventures* § 1. In such an enterprise a trust relationship is established. Mutual duties of fidelity, fair dealing and loyalty govern their conduct toward each other.

These principles are not restricted to conventional partnership agreements. "Equity refuses to confine within the bounds of classified transactions its precept of a loyalty that is undivided and unselfish.—A constructive trust is, then, the remedial device through which preference of self is made subordinate to loyalty to others." *Meinhard* v. *Salmon,* 249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1, 6–7 (1928) ; Scott, *The*

*Trustee's Duty of Loyalty,* 49 Harv.L.Rev. 521, 555, 565 (1936).

■ A constructive trust is the relief specifically requested in the complaint. The Statute of Frauds presents no defense to such a remedy. *Bruce* v. *Hastings, supra,* 41 Vt. at 385. The reason is that the present action is not one to enforce an oral contract concerning real property. It is to enforce a constructive trust. Restatement of Restitution, *supra,* Comment d.

■ Recognizing there was no conscious purpose to defraud, there is much in the fabric of the proof to indicate that the plaintiff participated with her sister and brother-in-law in the purchase of the Plymouth property as a joint venture. This is confirmed by the findings. Whether such was the true nature of the transaction is a question of their intentions. The crucial issue of intent was obscured by the chancellor's misapplication of the Statute of Frauds.

■ Although the chancellor dismissed the complaint, his findings report facts sufficient to adjust the proportionate shares and accounts between the parties. But the essential issue of their intentions, whether merely to effect a loan or engage in a joint venture, was left unattended. This Court cannot resolve the issue since we cannot supply an essential fact which cannot be established from the facts found by the court below. *West* v. *West,* 115 Vt. 458, 460, 63 A.2d 864 (1949) ; *Crowley* v. *Goodrich,* 114 Vt. 304, 310, 44 A.2d 128 (1945) ; *Nelson* v. *Bacon,* 113 Vt. 161, 171, 32 A.2d 140 (1943).

■ In the interest of justice, we have decided this appeal upon considerations that vary somewhat from those presented in the appellant's brief. This is to be done when the question presented is fundamental to the rights of the parties. *In re Estate of Pringle,* 119 Vt. 8, 9, 117 A.2d 379 (1955) ; *Sheldon* v. *Little,* 111 Vt. 301, 306, 15 A.2d 574 (1940). Accordingly, the cause will be remanded for retrial on the limited issue of whether the parties intended a joint venture.

This result renders it unnecessary to consider the other errors assigned in this appeal. Since the question may arise

again, we think it appropriate to point out that the trial court excluded testimony of the plaintiff and other witnesses concerning conversations with the deceased Hadley Wilhelm. The ruling was apparently founded on 12 V.S.A. §§ 1602–1603, which disqualifies a party from testifying in his own favor when the other party is dead.

The evidence should have been received. The deceased was not the sole party to this action since his wife was also a party and testified at the trial. It is the death of a sole party, or, if more than one, the death of all, that renders the surviving opponent incompetent to testify in his own favor. *Pope* v. *Hogan,* 92 Vt. 250, 254, 102 A. 937 (1918); *Dawson, Administrator* v. *Wait,* 41 Vt. 626, 627 (1869). Moreover, the defendants introduced evidence and cross-examined the plaintiff concerning transactions with the deceased, thereby waiving her incompetency. *Trask* v. *Walker's Estate,* 100 Vt. 51, 62, 134 A. 853 (1926). See also 2 J. Wigmore, Evidence § 578 (3d ed. 1940).

*Decree reversed and cause remanded for further proceedings as directed in the opinion of the Court.*